# UNITED STATES *v.* X-CITEMENT VIDEO, INC., ET AL.

No. 93–723.    Argued October 5, 1994—Decided November 29, 1994

REHNQUIST, C. J., delivered the opinion of the Court, in which STEVENS, O'CONNOR, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. STEVENS, J., filed a concurring opinion, *post*, p. 79. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined, *post*, p. 80.

*Solicitor General Days* argued the cause for the United States. With him on the briefs were *Assistant Attorney General Harris, Deputy Solicitor General Kneedler, Malcolm L. Stewart,* and *Joel M. Gershowitz.*

*Stanley Fleishman* argued the cause for respondents. With him on the briefs were *Barry A. Fisher* and *David Grosz.**

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

The Protection of Children Against Sexual Exploitation Act of 1977, as amended, prohibits the interstate transpor-

*Briefs of *amici curiae* urging reversal were filed for the State of Ohio et al. by *Lee Fisher,* Attorney General of Ohio, *Richard A. Cordray,* State Solicitor, and *Simon B. Karas,* and by the Attorneys General for their respective jurisdictions as follows: *Jimmy Evans* of Alabama, *Bruce M. Botelho* of Alaska, *Robert Marks* of Hawaii, *Roland W. Burris* of Illinois, *Richard P. Ieyoub* of Louisiana, *Frank J. Kelley* of Michigan, *Joseph P. Mazurek* of Montana, *Frankie Sue Del Papa* of Nevada, *Michael F. Easley* of North Carolina, *Ernest D. Preate, Jr.,* of Pennsylvania, *Pedro R. Pierluisi* of Puerto Rico, *T. Travis Medlock* of South Carolina, *Mark Barnett* of South Dakota, *Rosalle Simmonds Ballentine* of the Virgin Islands, *James S. Gilmore III* of Virginia, and *James E. Doyle* of Wisconsin; for the National Family Legal Foundation by *Len L. Munsil;* and for the National Law Center for Children and Families et al. by *H. Robert Showers* and *Cathleen A. Cleaver.*

Briefs of *amici curiae* were filed for the American Booksellers Foundation for Free Expression et al. by *Michael A. Bamberger* and *Margaret S. Determan;* for the Law and Linguistics Consortium by *Clark D. Cunningham;* for Morality in Media, Inc., by *Paul J. McGeady;* and for PHE, Inc., by *Bruce J. Ennis, Jr.,* and *John B. Morris, Jr.*

tation, shipping, receipt, distribution, or reproduction of visual depictions of minors engaged in sexually explicit conduct. 18 U. S. C. § 2252. The Court of Appeals for the Ninth Circuit reversed the conviction of respondents for violation of this Act. It held that the Act did not require that the defendant know that one of the performers was a minor, and that it was therefore facially unconstitutional. We conclude that the Act is properly read to include such a requirement.

Rubin Gottesman owned and operated X-Citement Video, Inc. Undercover police posed as pornography retailers and targeted X-Citement Video for investigation. During the course of the sting operation, the media exposed Traci Lords for her roles in pornographic films while under the age of 18. Police Officer Steven Takeshita expressed an interest in obtaining Traci Lords tapes. Gottesman complied, selling Takeshita 49 videotapes featuring Lords before her 18th birthday. Two months later, Gottesman shipped eight tapes of the underage Traci Lords to Takeshita in Hawaii.

These two transactions formed the basis for a federal indictment under the child pornography statute. The indictment charged respondents with one count each of violating 18 U. S. C. §§ 2252(a)(1) and (a)(2), along with one count of conspiracy to do the same under 18 U. S. C. § 371.[1] Evidence at trial suggested that Gottesman had full awareness of Lords' underage performances. *United States* v. *Gottesman*, No. CR 88–295KN, Findings of Fact ¶ 7 (CD Cal., Sept. 20, 1989), App. to Pet. for Cert. 39a ("Defendants knew that Traci Lords was underage when she made the films defendant's [*sic*] transported or shipped in interstate commerce"). The District Court convicted respondents of all three counts. On appeal, Gottesman argued, *inter alia*, that the Act was facially unconstitutional because it lacked a necessary scien-

---

[1] The indictment also charged six counts of violating federal obscenity statutes and two racketeering counts involving the same. Respondents were acquitted of these charges.

ter requirement and was unconstitutional as applied because the tapes at issue were not child pornography. The Ninth Circuit remanded to the District Court for reconsideration in light of *United States* v. *Thomas*, 893 F. 2d 1066 (CA9), cert. denied, 498 U. S. 826 (1990). In that case, the Ninth Circuit had held § 2252 did not contain a scienter requirement, but had not reached the constitutional questions. On remand, the District Court refused to set aside the judgment of conviction.

On appeal for the second time, Gottesman reiterated his constitutional arguments. This time, the court reached the merits of his claims and, by a divided vote, found § 2252 facially unconstitutional. The court first held that 18 U. S. C. § 2256 met constitutional standards in setting the age of majority at age 18, substituting lascivious for lewd, and prohibiting actual or simulated bestiality and sadistic or masochistic abuse. 982 F. 2d 1285, 1288–1289 (CA9 1992). It then discussed § 2252, noting it was bound by its conclusion in *Thomas* to construe the Act as lacking a scienter requirement for the age of minority. The court concluded that case law from this Court required that the defendant must have knowledge at least of the nature and character of the materials. 982 F. 2d, at 1290, citing *Smith* v. *California*, 361 U. S. 147 (1959); *New York* v. *Ferber*, 458 U. S. 747 (1982); and *Hamling* v. *United States*, 418 U. S. 87 (1974). The court extended these cases to hold that the First Amendment requires that the defendant possess knowledge of the particular fact that one performer had not reached the age of majority at the time the visual depiction was produced. 982 F. 2d, at 1291. Because the court found the statute did not require such a showing, it reversed respondents' convictions. We granted certiorari, 510 U. S. 1163 (1994), and now reverse.

Title 18 U. S. C. § 2252 (1988 ed. and Supp. V) provides, in relevant part:

"(a) Any person who—

"(1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if—

"(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

"(B) such visual depiction is of such conduct;

"(2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if—

"(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

"(B) such visual depiction is of such conduct;

.      .      .      .      .

"shall be punished as provided in subsection (b) of this section."

The critical determination which we must make is whether the term "knowingly" in subsections (1) and (2) modifies the phrase "the use of a minor" in subsections (1)(A) and (2)(A). The most natural grammatical reading, adopted by the Ninth Circuit, suggests that the term "knowingly" modifies only the surrounding verbs: transports, ships, receives, distributes, or reproduces. Under this construction, the word "knowingly" would not modify the elements of the minority of the performers, or the sexually explicit nature of the material, because they are set forth in independent clauses separated by interruptive punctuation. But we do not think this is the end of the matter, both because of anomalies which

result from this construction, and because of the respective presumptions that some form of scienter is to be implied in a criminal statute even if not expressed, and that a statute is to be construed where fairly possible so as to avoid substantial constitutional questions.

If the term "knowingly" applies only to the relevant verbs in § 2252—transporting, shipping, receiving, distributing, and reproducing—we would have to conclude that Congress wished to distinguish between someone who knowingly transported a particular package of film whose contents were unknown to him, and someone who unknowingly transported that package. It would seem odd, to say the least, that Congress distinguished between someone who inadvertently dropped an item into the mail without realizing it, and someone who consciously placed the same item in the mail, but was nonetheless unconcerned about whether the person had any knowledge of the prohibited contents of the package.

Some applications of respondents' position would produce results that were not merely odd, but positively absurd. If we were to conclude that "knowingly" only modifies the relevant verbs in § 2252, we would sweep within the ambit of the statute actors who had no idea that they were even dealing with sexually explicit material. For instance, a retail druggist who returns an uninspected roll of developed film to a customer "knowingly distributes" a visual depiction and would be criminally liable if it were later discovered that the visual depiction contained images of children engaged in sexually explicit conduct. Or, a new resident of an apartment might receive mail for the prior resident and store the mail unopened. If the prior tenant had requested delivery of materials covered by § 2252, his residential successor could be prosecuted for "knowing receipt" of such materials. Similarly, a Federal Express courier who delivers a box in which the shipper has declared the contents to be "film" "knowingly transports" such film. We do not assume that Congress, in passing laws, intended such results. *Public Citi-*

*zen* v. *Department of Justice,* 491 U. S. 440, 453–455 (1989); *United States* v. *Turkette,* 452 U. S. 576, 580 (1981).

Our reluctance to simply follow the most grammatical reading of the statute is heightened by our cases interpreting criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them. The landmark opinion in *Morissette* v. *United States,* 342 U. S. 246 (1952), discussed the common-law history of *mens rea* as applied to the elements of the federal embezzlement statute. That statute read: "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States . . . [s]hall be fined." 18 U. S. C. § 641, cited in *Morissette,* 342 U. S., at 248, n. 2. Perhaps even more obviously than in the statute presently before us, the word "knowingly" in its isolated position suggested that it only attached to the verb "converts," and required only that the defendant intentionally assume dominion over the property. But the Court used the background presumption of evil intent to conclude that the term "knowingly" also required that the defendant have knowledge of the facts that made the taking a conversion—*i. e.,* that the property belonged to the United States. *Id.,* at 271. See also *United States* v. *United States Gypsum Co.,* 438 U. S. 422, 438 (1978) ("[F]ar more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement").

*Liparota* v. *United States,* 471 U. S. 419 (1985), posed a challenge to a federal statute prohibiting certain actions with respect to food stamps. The statute's use of "knowingly" could be read only to modify "uses, transfers, acquires, alters, or possesses" or it could be read also to modify "in any manner not authorized by [the statute]." Noting that neither interpretation posed constitutional problems, *id.,* at 424, n. 6, the Court held the scienter requirement applied to

both elements by invoking the background principle set forth in *Morissette*. In addition, the Court was concerned with the broader reading which would "criminalize a broad range of apparently innocent conduct." 471 U. S., at 426. Imposing criminal liability on an unwitting food stamp recipient who purchased groceries at a store that inflated its prices to such purchasers struck the Court as beyond the intended reach of the statute.

The same analysis drove the recent conclusion in *Staples* v. *United States*, 511 U. S. 600 (1994), that to be criminally liable a defendant must know that his weapon possessed automatic firing capability so as to make it a machinegun as defined by the National Firearms Act. Congress had not expressly imposed any *mens rea* requirement in the provision criminalizing the possession of a firearm in the absence of proper registration. 26 U. S. C. § 5861(d). The Court first rejected the argument that the statute described a public welfare offense, traditionally excepted from the background principle favoring scienter. *Morissette, supra*, at 255. The Court then expressed concern with a statutory reading that would criminalize behavior that a defendant believed fell within "a long tradition of widespread lawful gun ownership by private individuals." *Staples*, 511 U. S., at 610. The Court also emphasized the harsh penalties attaching to violations of the statute as a "significant consideration in determining whether the statute should be construed as dispensing with *mens rea*." *Id.*, at 616.

Applying these principles, we think the Ninth Circuit's plain language reading of § 2252 is not so plain. First, § 2252 is not a public welfare offense. Persons do not harbor settled expectations that the contents of magazines and film are generally subject to stringent public regulation. In fact, First Amendment constraints presuppose the opposite view. Rather, the statute is more akin to the common-law offenses against the "state, the person, property, or public morals," *Morissette, supra*, at 255, that presume a scienter require-

ment in the absence of express contrary intent.[2] Second, *Staples'* concern with harsh penalties looms equally large respecting § 2252: Violations are punishable by up to 10 years in prison as well as substantial fines and forfeiture. 18 U. S. C. §§ 2252(b), 2253, 2254. See also *Morissette, supra,* at 260.

*Morissette,* reinforced by *Staples,* instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct. *Staples* held that the features of a gun as technically described by the firearm registration Act was such an element. Its holding rested upon "the nature of the particular device or substance Congress has subjected to regulation and the expectations that individuals may legitimately have in dealing with the regulated items." *Staples, supra,* at 619. Age of minority in § 2252 indisputably possesses the same status as an elemental fact because nonobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment. *Alexander* v. *United States,* 509 U. S. 544, 549–550 (1993); *Sable Communications of Cal., Inc.* v. *FCC,* 492 U. S. 115, 126 (1989); *FW/PBS, Inc.* v. *Dallas,* 493 U. S. 215, 224 (1990); *Smith* v. *California,* 361 U. S., at 152.[3] In the light of these

---

[2] *Morissette*'s treatment of the common-law presumption of *mens rea* recognized that the presumption expressly excepted "sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent." 342 U. S., at 251, n. 8. But as in the criminalization of pornography production at 18 U. S. C. § 2251, see *infra,* at 76, n. 5, the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age. The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver. Thus we do not think the common-law treatment of sex offenses militates against our construction of the present statute.

[3] In this regard, age of minority is not a "jurisdictional fact" that enhances an offense otherwise committed with an evil intent. See, *e. g., United States* v. *Feola,* 420 U. S. 671 (1975). There, the Court did not

decisions, one would reasonably expect to be free from regulation when trafficking in sexually explicit, though not obscene, materials involving adults. Therefore, the age of the performers is the crucial element separating legal innocence from wrongful conduct.

The legislative history of the statute evolved over a period of years, and perhaps for that reason speaks somewhat indistinctly to the question whether "knowingly" in the statute modifies the elements of subsections (1)(A) and (2)(A)—that the visual depiction involves the use of a minor engaging in sexually explicit conduct—or merely the verbs "transport or ship" in subsection (1) and "receive or distribute . . . [or] reproduce" in subsection (2). In 1959, we held in *Smith* v. *California, supra,* that a California statute that dispensed with any *mens rea* requirement as to the contents of an obscene book would violate the First Amendment. *Id.,* at 154. When Congress began dealing with child pornography in 1977, the content of the legislative debates suggest that it was aware of this decision. See, *e. g.,* 123 Cong. Rec. 30935 (1977) ("It is intended that they have knowledge of the type of material . . . proscribed by this bill. The legislative history should be clear on that so as to remove any chance it will lead into constitutional problems"). Even if that were not the case, we do not impute to Congress an intent to pass legislation that is inconsistent with the Constitution as construed by this Court. *Yates* v. *United States,* 354 U. S. 298, 319 (1957) ("In [construing the statute] we should not assume that Congress chose to disregard a constitutional danger zone so clearly marked"). When first passed, § 2252 pun-

require knowledge of "jurisdictional facts"—that the target of an assault was a federal officer. Criminal intent serves to separate those who understand the wrongful nature of their act from those who do not, but does not require knowledge of the precise consequences that may flow from that act once aware that the act is wrongful. *Id.,* at 685. Cf. *Hamling* v. *United States,* 418 U. S. 87, 120 (1974) (knowledge that the materials at issue are legally obscene not required).

ished one who "knowingly transports or ships in interstate or foreign commerce or mails, for the purpose of sale or distribution for sale, any *obscene* visual or print medium" if it involved the use of a minor engaged in sexually explicit conduct. Pub. L. 95–225, 92 Stat. 7 (emphasis added). Assuming awareness of *Smith*, at a minimum, "knowingly" was intended to modify "obscene" in the 1978 version.

In 1984, Congress amended the statute to its current form, broadening its application to those sexually explicit materials that, while not obscene as defined by *Miller* v. *California*, 413 U. S. 15 (1973),[4] could be restricted without violating the First Amendment as explained by *New York* v. *Ferber*, 458 U. S. 747 (1982). When Congress eliminated the adjective "obscene," all of the elements defining the character and content of the materials at issue were relegated to subsections (1)(a) and (2)(a). In this effort to expand the child pornography statute to its full constitutional limits, Congress nowhere expressed an intent to eliminate the *mens rea* requirement that had previously attached to the character and content of the material through the word obscene.

The Committee Reports and legislative debate speak more opaquely as to the desire of Congress for a scienter requirement with respect to the age of minority. An early form of the proposed legislation, S. 2011, was rejected principally because it failed to distinguish between obscene and nonobscene materials. S. Rep. No. 95–438, p. 12 (1977). In evaluating the proposal, the Justice Department offered its thoughts:

> "[T]he word 'knowingly' in the second line of section 2251 is unnecessary and should be stricken. . . . Unless 'knowingly' is deleted here, the bill might be subject to an interpretation requiring the Government to prove

---

[4] The *Miller* test for obscenity asks whether the work, taken as a whole, "appeals to the prurient interest," "depicts or describes [sexual conduct] in a patently offensive way," and "lacks serious literary, artistic, political, or scientific value." *Miller*, 413 U. S., at 24.

the defendant's knowledge of everything that follows 'knowingly', including the age of the child. We assume that it is not the intention of the drafters to require the Government to prove that the defendant knew the child was under age sixteen but merely to prove that the child was, in fact, less than age sixteen. . . .

"On the other hand, the use of the word 'knowingly' in subsection 2252(a)(1) is appropriate to make it clear that the bill does not apply to common carriers or other innocent transporters who have no knowledge of the nature or character of the material they are transporting. To clarify the situation, the legislative history might reflect that the defendant's knowledge of the age of the child is not an element of the offense but that the bill is not intended to apply to innocent transportation with no knowledge of the nature or character of the material involved." *Id.*, at 28–29.

Respondents point to this language as an unambiguous revelation that Congress omitted a scienter requirement. But the bill eventually reported by the Senate Judiciary Committee adopted some, but not all, of the Department's suggestions; most notably, it restricted the prohibition in § 2251 to obscene materials. *Id.*, at 2. The Committee did not make any clarification with respect to scienter as to the age of minority. In fact, the version reported by the Committee eliminated § 2252 altogether. *Ibid.* At that juncture, Senator Roth introduced an amendment which would be another precursor of § 2252. In one paragraph, the amendment forbade any person to "knowingly transport [or] ship . . . [any] visual medium depicting a minor engaged in sexually explicit conduct." 123 Cong. Rec. 33047 (1977). In an exchange during debate, Senator Percy inquired:

"Would this not mean that the distributor or seller must have either, first, actual knowledge that the materials do contain child pornographic depictions or, second, cir-

cumstances must be such that he should have had such actual knowledge, and that mere inadvertence or negligence would not alone be enough to render his actions unlawful?" *Id.*, at 33050.

Senator Roth replied:

"That is absolutely correct. This amendment, limited as it is by the phrase 'knowingly,' insures that only those sellers and distributors who are consciously and deliberately engaged in the marketing of child pornography . . . are subject to prosecution . . . ." *Ibid.*

The parallel House bill did not contain a comparable provision to § 2252 of the Senate bill, and limited § 2251 prosecutions to obscene materials. The Conference Committee adopted the substance of the Roth amendment in large part, but followed the House version by restricting the proscribed depictions to obscene ones. The new bill did restructure the § 2252 provision somewhat, setting off the age of minority requirement in a separate subclause. S. Conf. Rep. No. 95–601, p. 2 (1977). Most importantly, the new bill retained the adverb "knowingly" in § 2252 while simultaneously deleting the word "knowingly" from § 2251(a). The Conference Committee explained the deletion in § 2251(a) as reflecting an "intent that it is not a necessary element of a prosecution that the defendant knew the actual age of the child." *Id.*, at 5.[5] Respondents point to the appearance of "knowingly" in

---

[5] The difference in congressional intent with respect to § 2251 versus § 2252 reflects the reality that producers are more conveniently able to ascertain the age of performers. It thus makes sense to impose the risk of error on producers. *United States* v. *United States District Court for Central District of California,* 858 F. 2d 534, 543, n. 6 (CA9 1988). Although producers may be convicted under § 2251(a) without proof they had knowledge of age, Congress has independently required both primary and secondary producers to record the ages of performers with independent penalties for failure to comply. 18 U. S. C. §§ 2257(a) and (i) (1988 ed. and Supp. V); *American Library Assn.* v. *Reno,* 33 F. 3d 78 (CADC 1994).

§ 2251(c) and argue that § 2252 ought to be read like § 2251. But this argument depends on the conclusion that § 2252(c) does not include a knowing requirement, a premise that respondents fail to support. Respondents offer in support of their premise only the legislative history discussing an intent to exclude a scienter requirement from *§ 2251(a)*. Because §§ 2251(a) and 2251(c) were passed at different times and contain different wording, the intent to exclude scienter from § 2251(a) does not imply an intent to exclude scienter from § 2251(c).[6]

The legislative history can be summarized by saying that it persuasively indicates that Congress intended that the term "knowingly" apply to the requirement that the depiction be of sexually explicit conduct; it is a good deal less clear from the Committee Reports and floor debates that Congress intended that the requirement extend also to the age of the performers. But, turning once again to the statute itself, if the term "knowingly" applies to the sexually explicit conduct depicted, it is emancipated from merely modifying the verbs in subsections (1) and (2). And as a matter of grammar it is

---

[6] Congress amended § 2251 to insert subsection (c) in 1986. Pub. L. 99–628, 100 Stat. 3510. That provision created new offenses relating to the advertising of the availability of child pornography or soliciting children to participate in such depictions. The legislative history of § 2251(c) does address the scienter requirement: "The government must prove that the defendant knew the character of the visual depictions as depicting a minor engaging in sexually explicit conduct, *but need not prove that the defendant actually knew the person depicted was in fact under 18 years of age* or that the depictions violated Federal law." H. R. Rep. No. 99–910, p. 6 (1986). It may be argued that since the House Committee Report rejects any requirement of scienter as to the age of minority for § 2251(c), the House Committee thought that there was no such requirement in § 2252. But the views of one Congress as to the meaning of an Act passed by an earlier Congress are not ordinarily of great weight, *United States* v. *Clark,* 445 U. S. 23, 33, n. 9 (1980), citing *United States* v. *Southwestern Cable Co.,* 392 U. S. 157, 170 (1968), and the views of the committee of one House of another Congress are of even less weight, *Pierce* v. *Underwood,* 487 U. S. 552, 566 (1988).

difficult to conclude that the word "knowingly" modifies one of the elements in subsections (1)(A) and (2)(A), but not the other.

A final canon of statutory construction supports the reading that the term "knowingly" applies to both elements. Cases such as *Ferber*, 458 U. S., at 765 ("As with obscenity laws, criminal responsibility may not be imposed without some element of scienter on the part of the defendant"); *Smith* v. *California*, 361 U. S. 147 (1959); *Hamling* v. *United States*, 418 U. S. 87 (1974); and *Osborne* v. *Ohio*, 495 U. S. 103, 115 (1990), suggest that a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts. It is therefore incumbent upon us to read the statute to eliminate those doubts so long as such a reading is not plainly contrary to the intent of Congress. *Edward J. DeBartolo Corp.* v. *Florida Gulf Coast Building & Constr. Trades Council*, 485 U. S. 568, 575 (1988).

For all of the foregoing reasons, we conclude that the term "knowingly" in § 2252 extends both to the sexually explicit nature of the material and to the age of the performers.

As an alternative grounds for upholding the reversal of their convictions, respondents reiterate their constitutional challenge to 18 U. S. C. § 2256. These claims were not encompassed in the question on which this Court granted certiorari, but a prevailing party, without cross-petitioning, is "entitled under our precedents to urge any grounds which would lend support to the judgment below." *Dayton Bd. of Ed.* v. *Brinkman*, 433 U. S. 406, 419 (1977). Respondents argue that § 2256 is unconstitutionally vague and overbroad because it makes the age of majority 18, rather than 16 as did the New York statute upheld in *New York* v. *Ferber*, *supra*, and because Congress replaced the term "lewd" with the term "lascivious" in defining illegal exhibition of the genitals of children. We regard these claims as insubstantial,

and reject them for the reasons stated by the Court of Appeals in its opinion in this case.

Respondents also argued below that their indictment was fatally defective because it did not contain a scienter requirement on the age of minority. The Court of Appeals did not reach this issue because of its determination that § 2252 was unconstitutional on its face, and we decline to decide it here.

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE STEVENS, concurring.

In my opinion, the normal, commonsense reading of a subsection of a criminal statute introduced by the word "knowingly" is to treat that adverb as modifying each of the elements of the offense identified in the remainder of the subsection. Title 18 U. S. C. § 2252(a)(1) (1988 ed. and Supp. V) reads as follows:

> "(a) Any person who—
>
> "(1) *knowingly* transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if—
>
> "(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> "(B) such visual depiction is of such conduct." (Emphasis added.)

Surely reading this provision to require proof of scienter for each fact that must be proved is far more reasonable than adding such a requirement to a statutory offense that contains no scienter requirement whatsoever. Cf. *Staples* v. *United States*, 511 U. S. 600, 624 (1994) (STEVENS, J., dissenting). Indeed, as the Court demonstrates, *ante*, at 69–70, to give the statute its most grammatically correct reading, and merely require knowledge that a "visual depiction" has been

shipped in interstate commerce, would be ridiculous. Accordingly, I join the Court's opinion without qualification.

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

Today's opinion is without antecedent. None of the decisions cited as authority support interpreting an explicit statutory scienter requirement in a manner that its language simply will not bear. *Staples* v. *United States*, 511 U. S. 600 (1994), discussed *ante*, at 71, and *United States* v. *United States Gypsum Co.*, 438 U. S. 422 (1978), discussed *ante*, at 70, applied the background common-law rule of scienter to a statute that said *nothing* about the matter. *Morissette* v. *United States*, 342 U. S. 246 (1952), discussed *ante*, at 70, applied that same background rule to a statute that *did* contain the word "knowingly," in order to conclude that "knowingly converts" requires knowledge not merely of the fact of one's assertion of dominion over property, but also knowledge of the fact that that assertion *is* a conversion, *i. e.*, is wrongful.* *Liparota* v. *United States*, 471 U. S. 419 (1985), discussed *ante*, at 70, again involved a statute that did contain the word "'knowingly,'" used in such a fashion that it could reasonably and grammatically be thought to apply (1) only to the phrase "'uses, transfers, acquires, alters, or possesses'" (which would cause a defendant to be liable without wrongful intent), or (2) also to the later phrase "'in any manner not authorized by [the statute].'" Once again applying the background rule of scienter, the latter reasonable and permissible reading was preferred.

There is no way in which any of these cases, or all of them in combination, can be read to stand for the sweeping propo-

---

*The case did not involve, as the Court claims, a situation in which, "even more obviously than in the statute presently before us, the word 'knowingly' in its isolated position suggested that it only attached to the verb 'converts,'" *ante*, at 70, and we nonetheless applied it as well to another word. The issue was simply the meaning of "knowingly converts."

sition that "the presumption in favor of a scienter require-
ment should apply to each of the statutory elements that
criminalize otherwise innocent conduct," *ante,* at 72, *even
when the plain text of the statute says otherwise.* All those
earlier cases employ the presumption as a rule of interpreta-
tion which applies when Congress has not addressed the
question of criminal intent (*Staples* and *Gypsum*), or when
the import of what it has said on that subject is ambiguous
(*Morissette* and *Liparota*). Today's opinion converts the
rule of interpretation into a rule of law, contradicting the
plain import of what Congress has specifically prescribed
regarding criminal intent.

In *United States* v. *Thomas,* 893 F. 2d 1066, 1070 (CA9),
cert. denied, 498 U. S. 826 (1990), the Ninth Circuit inter-
preted 18 U. S. C. § 2252 to require knowledge of neither the
fact that the visual depiction portrays sexually explicit con-
duct, nor the fact that a participant in that conduct was a
minor. The panel in the present case accepted that inter-
pretation. See 982 F. 2d 1285, 1289 (CA9 1992). To say, as
the Court does, that this interpretation is "the most gram-
matical reading," *ante,* at 70, or "[t]he most natural grammat-
ical reading," *ante,* at 68, is understatement to the point of
distortion—rather like saying that the ordinarily preferred
total for two plus two is four. The Ninth Circuit's interpre-
tation is in fact and quite obviously *the only grammatical
reading.* If one were to rack his brains for a way to express
the thought that the knowledge requirement in subsection
(a)(1) applied *only* to the transportation or shipment of vis-
ual depiction in interstate or foreign commerce, and *not* to
the fact that that depiction was produced by use of a minor
engaging in sexually explicit conduct, and was a depiction of
that conduct, *it would be impossible* to construct a sentence
structure that more clearly conveys that thought, and that
thought alone. The word "knowingly" is contained, not
merely in a distant phrase, but in an entirely separate clause
from the one into which today's opinion inserts it. The

equivalent, in expressing a simpler thought, would be the following: "Anyone who knowingly double-parks will be subject to a $200 fine if that conduct occurs during the 4:30-to-6:30 rush hour." It could not be clearer that the scienter requirement applies only to the double-parking, and not to the time of day. So also here, it could not be clearer that it applies only to the transportation or shipment of visual depiction in interstate or foreign commerce. There is no doubt. There is no ambiguity. There is no possible "less natural" but nonetheless permissible reading.

I have been willing, in the case of civil statutes, to acknowledge a doctrine of "scrivener's error" that permits a court to give an unusual (though not unheard-of) meaning to a word which, if given its normal meaning, would produce an absurd and arguably unconstitutional result. See *Green* v. *Bock Laundry Machine Co.*, 490 U. S. 504, 527 (1989) (SCALIA, J., concurring). Even if I were willing to stretch that doctrine so as to give the problematic text a meaning it cannot possibly bear; and even if I were willing to extend the doctrine to criminal cases in which its application would produce conviction rather than acquittal; it would still have no proper bearing here. For the *sine qua non* of any "scrivener's error" doctrine, it seems to me, is that the meaning genuinely intended but inadequately expressed must be absolutely clear; otherwise we might be rewriting the statute rather than correcting a technical mistake. That condition is not met here.

The Court acknowledges that "it is a good deal less clear from the Committee Reports and floor debates that Congress intended that the requirement [of scienter] extend . . . to the age of the performers." *Ante*, at 77. That is surely so. In fact, it seems to me that the dominant (if not entirely uncontradicted) view expressed in the legislative history is that set forth in the statement of the Carter Administration Justice Department which introduced the original bill: "[T]he defendant's knowledge of the age of the child is not an ele-

ment of the offense but . . . the bill is not intended to apply to innocent transportation with no knowledge of the nature or character of the material involved." S. Rep. No. 95–438, p. 29 (1977). As applied to the final bill, this would mean that the scienter requirement applies to the element of the crime that the depiction be of "sexually explicit conduct," but not to the element that the depiction "involv[e] the use of a minor engaging" in such conduct. See 18 U. S. C. §§ 2252(a)(1)(A) and (a)(2)(A). This is the interpretation that was argued by the United States before the Ninth Circuit. See 982 F. 2d, at 1289.

The Court rejects this construction of the statute for two reasons: First, because "as a matter of grammar it is difficult to conclude that the word 'knowingly' modifies one of the elements in subsections (1)(A) and (2)(A), but not the other." *Ante*, at 77–78. But as I have described, "as a matter of grammar" it is also difficult (nay, impossible) to conclude that the word "knowingly" modifies *both* of those elements. It is really quite extraordinary for the Court, fresh from having, as it says, *ibid.*, "emancipated" the adverb from the grammatical restriction that renders it inapplicable to the *entire* conditional clause, suddenly to insist that the demands of syntax must prevail over legislative intent—thus producing an end result that accords *neither* with syntax *nor* with supposed intent. If what the statute says must be ignored, one would think we might settle at least for what the statute was meant to say; but alas, we are told, what the statute says prevents this.

The Court's second reason is even worse: "[A] statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts." *Ante*, at 78. In my view (as in the apparent view of the Government before the Court of Appeals) that is not true. The Court derives its "serious constitutional doubts" from the fact that "sexually explicit materials involving persons over the age of 17 are protected by the First Amendment,"

*ante*, at 72. We have made it entirely clear, however, that the First Amendment protection accorded to such materials is not as extensive as that accorded to other speech. "[T]here is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance . . . ." *Young* v. *American Mini Theatres, Inc.*, 427 U. S. 50, 61 (1976). See also *id.*, at 70–71 ("[E]ven though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate . . .") (opinion of STEVENS, J., joined by Burger, C. J., and White and REHN-QUIST, JJ.). Cf. *FCC* v. *Pacifica Foundation*, 438 U. S. 726, 743 (1978) (While some broadcasts of patently offensive references to excretory and sexual organs and activities may be protected, "they surely lie at the periphery of First Amendment concern"). Let us be clear about what sort of pictures are at issue here. They are not the sort that will likely be found in a catalog of the National Gallery or the Metropolitan Museum of Art. "'[S]exually explicit conduct,'" as defined in the statute, does not include mere nudity, but only *conduct* that consists of "sexual intercourse . . . between persons of the same or opposite sex," "bestiality," "masturbation," "sadistic or masochistic abuse," and "lascivious exhibition of the genitals or pubic area." See 18 U. S. C. § 2256(2). What is involved, in other words, is not the clinical, the artistic, nor even the risqué, but hard-core pornography. Indeed, I think it entirely clear that all of what is involved constitutes not merely pornography but fully proscribable obscenity, except to the extent it is joined with some other material (or perhaps some manner of presentation) that has artistic or other social value. See *Miller* v. *California*, 413 U. S. 15, 24 (1973). (Such a requirement cannot be imposed, of

course, upon fully protected speech: one can shout "Down with the Republic!," "Hooray for Mozart!," or even "Twenty-Three Skidoo!," *whether or not* that expression is joined with something else of social value.) And whereas what is on one side of the balance in the present case is this material of minimal First Amendment concern, the Court has described what is on the other side—"prevention of sexual exploitation and abuse of children"—as "a government objective of surpassing importance." *New York* v. *Ferber*, 458 U. S. 747, 757 (1982).

I am not concerned that holding the purveyors and receivers of this material absolutely liable for supporting the exploitation of minors will deter any activity the United States Constitution was designed to protect. But I am concerned that the Court's suggestion of the unconstitutionality of such absolute liability will cause Congress to leave the world's children inadequately protected against the depredations of the pornography trade. As we recognized in *Ferber, supra*, at 766, n. 19, the producers of these materials are not always readily found, and are often located abroad; and knowledge of the performers' age by the dealers who specialize in child pornography, and by the purchasers who sustain that market, is obviously hard to prove. The First Amendment will lose none of its value to a free society if those who knowingly place themselves in the stream of pornographic commerce are obliged to make sure that they are not subsidizing child abuse. It is no more unconstitutional to make persons who knowingly deal in hard-core pornography criminally liable for the underage character of their entertainers than it is to make men who engage in consensual fornication criminally liable (in statutory rape) for the underage character of their partners.

I would dispose of the present case, as the Ninth Circuit did, by reading the statute as it is written: to provide criminal penalties for the knowing transportation or shipment of a visual depiction in interstate or foreign commerce, and for

the knowing receipt or distribution of a visual depiction so transported or shipped, if that depiction was (whether the defendant knew it or not) a portrayal of a minor engaging in sexually explicit conduct. I would find the statute, as so interpreted, to be unconstitutional since, by imposing criminal liability upon those not knowingly dealing in pornography, it establishes a severe deterrent, not narrowly tailored to its purposes, upon fully protected First Amendment activities. See *Smith* v. *California,* 361 U. S. 147, 153–154 (1959). This conclusion of unconstitutionality is of course no ground for going back to reinterpret the statute, making it say something that it does not say, but that *is* constitutional. Not every construction, but only " 'every *reasonable* construction must be resorted to, in order to save a statute from unconstitutionality.' " *Edward J. DeBartolo Corp.* v. *Florida Gulf Coast Building & Constr. Trades Council,* 485 U. S. 568, 575 (1988) (quoting *Hooper* v. *California,* 155 U. S. 648, 657 (1895)) (emphasis added). " ' "Although this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute . . ." or judicially rewriting it.' " *Commodity Futures Trading Comm'n* v. *Schor,* 478 U. S. 833, 841 (1986) (quoting *Aptheker* v. *Secretary of State,* 378 U. S. 500, 515 (1964)). Otherwise, there would be no such thing as an unconstitutional statute. As I have earlier discussed, in the present case no reasonable alternative construction exists, neither any that can be coaxed from the text nor any that can be substituted for the text on "scrivener's error" grounds. I therefore agree with the Ninth Circuit that respondents' conviction cannot stand.

I could understand (though I would not approve of) a disposition which, in order to uphold this statute, departed from its text as little as possible in order to sustain its constitutionality—*i. e.,* a disposition applying the scienter requirement to the pornographic nature of the materials, but not to the age of the performers. I can neither understand nor

approve of the disposition urged by the United States before this Court and adopted today, which not only rewrites the statute, but (1) rewrites it more radically than its constitutional survival demands, and (2) raises baseless constitutional doubts that will impede congressional enactment of a law providing greater protection for the child-victims of the pornography industry. The Court today saves a single conviction by putting in place a relatively toothless child-pornography law that Congress did not enact, and by rendering congressional strengthening of that new law more difficult. I respectfully dissent.