**UNITED STATES of America, Plaintiff,**

v.

**Sharonda WHITE, Defendant.**

**No. CR. S–97–172 GEB.**

United States District Court, E.D. California.

Oct. 15, 1997.

**1010**

Jodi Beth Rafkin, Assistant U.S. Attorney, Sacramento, CA, for plaintiff.

Jeffrey L. Staniels and Mary French, Assistant Federal Defenders, Sacramento, CA, for defendant.

## ORDER

BURRELL, District Judge.

Defendant Sharonda White seeks to dismiss the criminal indictment against her on the following grounds: 1) the Court lacks jurisdiction; and 2) the statute under which Defendant is charged unconstitutionally fails to require proof of *mens rea* as an element of the crime.

## I. Background

In July 1996, Defendant, an American national, resided in Okinawa, Japan with her husband Roshied White and her two-year-old son Crosby White. On July 16, 1996, Crosby White was pronounced dead at the United States Naval Hospital in Okinawa. The same day, Defendant was arrested by Japanese authorities and taken into custody in Japan for Crosby White's death.

Subsequently, Japanese authorities notified the United States Air Force that they would not prosecute. Defendant. Defendant was released to United States officials and immediately returned to the United States. On March 27, 1977, Defendant was indicted for killing Crosby White. The indictment read in pertinent part that Defendant

> on or about the 16th day of July, 1996, in Okinawa, Japan, being a national of the United States of America, did with malice aforethought kill a two-year-old child who was also a national of the United States of America while said nationals were outside the United States but within the jurisdiction of another country in violation of Title 18 United States Code, Section 1119.

## II. Discussion

### A. Motion to Dismiss for Lack of Jurisdiction

Defendant argues that the Court should dismiss the indictment for lack of jurisdiction on the following grounds: 1) that Congress was without authority to enact 18 U.S.C. § 1119; 2) that prosecuting Defendant under this statute denies her due process rights under the Fifth Amendment; and 3) that the government failed to comply with statutory prerequisites to instituting a prosecution under § 1119.[1]

### 1. Lack of Congressional Authority

Defendant argues that Congress' enumerated Article I powers do not provide authority for enactment of § 1119. Defendant cites to a series of cases for the familiar proposition that the several "States possess primary authority for defining and enforcing the criminal law." *Brecht v. Abrahamson,* 507 U.S. 619, 635, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). However, Defendant's argument fails to

---

1. Section 1119(b) provides that "[a] person who, being a national of the United States, kills ... a national of the United States while such national is outside the United States but within the jurisdiction of another country shall be punished as provided under sections 1111, 1112, and 1113." Sections 1111 through 1113 define and set the punishments for completed or attempted murder and manslaughter. *See* 18 U.S.C. §§ 1111–1113.

recognize the "differences between the powers of the federal government in respect to foreign or external affairs and those in respect of domestic or internal affairs." *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 315, 57 S.Ct. 216, 81 L.Ed. 255 (1936). "The broad statement that the federal government can exercise no powers except those specifically enumerated in the Constitution … is categorically true only in respect to our internal affairs." *Id.* at 315–16, 57 S.Ct. 216. "There is no constitutional bar to the extraterritorial application of penal laws. Numerous decisions have upheld the authority of the United States to enact and enforce criminal laws with extraterritorial effect." *United States v. King*, 552 F.2d 833, 850–51 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977) (citing cases). Congress' exercise of this authority is both constitutionally and internationally permissible. *United States v. Cotten*, 471 F.2d 744, 749–50 (9th Cir. 1973). As the Supreme Court explained in *Curtiss–Wright Corp.*, 299 U.S. at 315–16, 57 S.Ct. 216, there are "fundamental" differences between federal power in the domestic area, and federal power in relation to foreign affairs:

> The broad statement that the federal government can exercise no powers except those specifically enumerated in the Constitution, and such implied powers as are necessary and proper to carry into effect the enumerated powers, is categorically true only in respect to our internal affairs.... And since the states severally never possessed international powers, such powers could not have been carved from the mass of state powers but obviously were transmitted to the United States from some other source.

■ "[U]nder international law, a nation may generally assert jurisdiction over its citizens." *United States v. Juda*, 46 F.3d 961, 967 (9th Cir.1995), *cert. denied*, 515 U.S. 1169, 115 S.Ct. 2632, 132 L.Ed.2d 872 (1995). It is pellucid Congress possesses external sovereignty authority to pass criminal laws proscribing its nationals' outlaw conduct against other nationals abroad. Thus, Defendant's argument regarding Congressional authority to enact § 1119 is unavailing.

### 2. Due Process

Defendant next contends that prosecuting her under § 1119 would violate her right to due process. Defendant relies on language in *United States v. Davis*, 905 F.2d 245, 248–49 (9th Cir.1990), *cert. denied* 498 U.S. 1047, 111 S.Ct. 753, 112 L.Ed.2d 773 (1991), which stated, "[i]n order to apply extraterritorially a federal criminal statute to a defendant consistent with due process, there must be a sufficient nexus between the defendant and the United States." Defendant argues the application of § 1119 to her is "unreasonable, arbitrary, and fundamentally unfair" because "[t]he alleged conduct had no link to the United States." *See* Def.'s Mot. to Dismiss, filed August 21, 1997, at 11. Therefore, Defendant suggests the prosecution is inconsistent with due process principles because the alleged acts "did not take place within the United States or have any effect on the United States." *Id.*

■ Contrary to Defendant's assertions, no due process problem is presented here. First, where the government seeks to prosecute a United States citizen for acts occurring in foreign lands, due process does not require a demonstration of "nexus." *See Juda*, 46 F.3d at 966–67 (noting that prior cases requiring a nexus involved situations where the United States sought to prosecute foreign nationals); *United States v. Caicedo*, 47 F.3d 370, 372 (9th Cir.1995) ("The nexus requirement in *Davis* is grounded on the international law principles applicable to foreign flag vessels."). Moreover, even if a nexus was required, it has been established. Defendant is an American citizen and she is accused of killing another American citizen. The interest of the United States in this case can hardly be questioned.

■ Defendant also argues that the Court's exercise of jurisdiction over the case violates her right of due process because "[v]irtually all of the witnesses in this case are located in Japan." Def.'s Mot. to Dismiss at 12. However, "due process is not violated unless a material witness's unavailability is attributable to unilateral government action." *United States v. Gonzales,* 617 F.2d 1358, 1363 (9th Cir. 1980). "The Government cannot reasonably be held responsible for the inherent difficulty of locating and producing foreign witnesses, at least when the Government has not concealed the witnesses or removed them from the United States." *United States v. Layton,* 855 F.2d 1388, 1408 (9th Cir.1988), *cert. denied* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989). Here, Defendant has not shown the government did anything to inhibit her access to witnesses.

### 3. Statutory prerequisites

Defendant next contends the government has failed to comply with the statutory prerequisites to prosecuting her for a violation of 18 U.S.C. § 1119. Section 1119(c)(2) provides:

"No prosecution shall be approved under this section unless the Attorney General, in consultation with the Secretary of State, determines that the conduct took place in a country in which the person is no longer present, and the country lacks the ability to lawfully secure the person's return. A determination by the Attorney General under this paragraph is not subject to judicial review."

Defendant argues strenuously that the government could not have reasonably concluded that Japan lacked the ability to secure Defendant's return. Defendant concludes, based on her reading of the extradition treaty between the United States and Japan, see Def's Mot. to Dismiss, Appendix A–2, that Japan could secure Defendant's return.

■ However, Defendant's argument fails to recognize that the Attorney General's determination under § 1119(c)(2) is not subject to judicial review. The judgment of Congress to insulate the determination from judicial review is consistent with the general proposition that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute ... generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Congress was well within its authority to repose the determination to prosecute exclusively with the Attorney General. Thus, the Court will not review whether the Attorney General correctly concluded that Japan could not lawfully secure Defendant's return.[2]

■ Defendant further argues that prosecution in the United States is barred because Japan has already "prosecuted" her. Section 1119(c)(1) states that "[n]o prosecution shall be approved if prosecution has been previously undertaken by a foreign country for the same conduct." Defendant contends that when Japanese

---

**2.** Defendant further argues that because the Attorney General and Secretary of State did not themselves personally make the determination of whether Japan could "lawfully secure" Defendant's return, the government failed to comply with the statute's requirements. However, both the Attorney General and Secretary of State have statutory authority to delegate their functions. See 22 U.S.C. § 2651a(a)(4) (Secretary of State); 28 U.S.C. § 510 (Attorney General). This delegation authority remains intact unless the statute contains language limiting the delegation power. *See United States v. Plesinski,* 912

F.2d 1033, 1037 (9th Cir.1990); *cf.* 18 U.S.C. § 1119(c)(1) ("No prosecution may be instituted against any person under this section except upon the written approval of the Attorney General, the Deputy Attorney General, or an Assistant Attorney General, which function of approving prosecutions may not be delegated."). Section 1119(c)(2) does not contain language limiting delegation. Thus, both Attorney General Reno and Secretary of State Albright appropriately delegated their functions under Section 1119(c)(2) to subordinates. *See* Gov't Opp'n Mot. Dismiss, Exhibits 1 & 2.

officials took her into custody, evaluated her, and decided they could not proceed under Japanese law, their conduct "constituted 'undertaking a prosecution.'" *See* Def.'s Mot. to Dismiss at 14. This argument is without merit.

### B. *Motion to Dismiss for Absence of Mens Rea Term*

Defendant also makes a facial challenge to § 1119, arguing that the statute unconstitutionally fails to require a *mens rea* element for a murder conviction. Section 1119, entitled "Foreign murder of United States nationals," reads in pertinent part as follows:

A person who, being a national of the United States, kills or attempts to kill a national of the United States while such national is outside the United States but within the jurisdiction of another country shall be punished as provided under sections 1111, 1112, and 1113.

Defendant asserts the word "kill," as opposed to "murder" or "manslaughter," does not contain a *mens rea* component. Arguing that the word "kill" is unambiguous, Defendant asserts that the Court may not look beyond the plain meaning of the word to find a *mens rea* element. Thus, because section 1119 fails to require proof of criminal intent, Defendant argues it unconstitutionally outlaws justifiable and excusable homicide as well as culpable homicide.[3]

However, Defendant's reading of § 1119 is too narrow. Section 1119 requires one who kills as proscribed to be punished under sections 1111 through 1113. Sections 1111 through 1113 prescribe the punishment for murder, manslaughter, and attempted murder and manslaughter, respectively. *See, e.g.,* 18 U.S.C. § 1111 ("Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life...."). In order to determine which punishment to apply to a violation of section 1119, the Court must necessarily determine whether the proven offense is murder, manslaughter or attempted manslaughter. Thus, the *mens rea* components contained in sections 1111 through 1113 have been incorporated into section 1119 by necessary implication.[4] *See, e.g.,* 18 U.S.C. § 1111 (defining "murder" as "the unlawful killing of a human being with malice aforethought").

Moreover, construing section 1119 to contain a *mens rea* element is consistent with Congressional intent.[5] "As in all cases of statutory construction, our task is to interpret the words of the statute in light of the purposes Congress sought to serve." *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 118, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (citation omitted). As evidenced by section 1119's title, "Foreign *murder* of United States nationals," Congress did not intend to criminalize justifiable or excusable killings. In addition, Congress' incorporation of the punishment

---

**3.** The government alleges in the indictment that Defendant possessed a *mens rea,* contending that she killed Crosby White "with malice aforethought." Further, the government acknowledges that it must prove Defendant was of culpable mind to convict her as charged. *See* Gov't Opp'n at 8.

**4.** The defense argues Congress only incorporated the punishment portions of sections 1111 through 1113, but not the definitions of the offenses described in those sections. To illustrate that "Congress clearly knows how to incorporate definitions when it wants to," see Def.'s Mot. to Dismiss at 7, Defendant contrasts the language in § 1114 which reads in part as follows:

Whoever kills ... shall be punished—

(1) in the case of murder, as provided under section 1111;

(2) in the case of manslaughter, as provided under section 1112....

Defendant asserts the presence of the words "murder" and "manslaughter" in section 1114 shows Congressional intent to incorporate not only the punishment for section 1111 murder, but also its definition for murder.

**5.** This "reluctance to simply follow the most grammatical reading of the statute is heightened by ... cases interpreting criminal statutes to include broadly applicable [*mens rea*] requirements, even where the statute by its terms does not contain them." *U.S. v. X–Citement Video, Inc.,* 513 U.S. 64, 70, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).

provisions of sections 1111 through 1113 demonstrates Congressional intent of having the culpability of the offender determined.

For the foregoing reasons, both of Defendants' motions to dismiss the indictment are DENIED.

IT IS SO ORDERED.