**2007 UT 22**

**STATE of Utah, Plaintiff and Respondent,**

v.

**John Vonderhaar HALTOM, Defendant and Petitioner.**

**No. 20050815.**

Supreme Court of Utah.

Feb. 23, 2007.

dard of ordinary negligence. We hold that the court of appeals was correct and affirm.

## STANDARD OF REVIEW AND BACKGROUND

■ ¶ 2 The issue we take up today presents a pure question of law. We therefore review the decision of the court of appeals for correctness. We need not dwell on the facts that the jury considered in convicting Mr. Haltom. By providing a brief summary of the circumstances that led to Mr. Haltom's felony conviction, we merely provide context for our legal analysis and offer fair warning that law enforcement officials, at least those in the city of Midvale, are apt to display considerable zeal in enforcing statutes that regulate the operation of sexually oriented businesses and the sale of their products.

¶ 3 Mr. Haltom is a co-owner of Dr. John's Lingerie and Novelty Store. From the day it opened, Dr. John's was not seen as a welcome addition to Midvale's commercial community, and the offended citizens of Midvale complained to the police department about the store's wares. The department sent a thirty-year-old detective to the store who twice bought adult-only videos without being asked to verify his age. Based on his experience with the purchases, the detective believed that the store would sell merchandise to a minor. To advance his theory, the detective solicited minors to test Dr. John's age verification protocols. The store first turned away a seventeen-year-old boy at its door, but Dr. John's failed its second test.

¶ 4 Brittany was seventeen years old when she entered Dr. John's on August 4, 2000. She would turn eighteen on December 12, 2000. An employee approached Brittany when she entered the store and asked for her identification. She presented her driver's license. The employee "glanced" at it but permitted her to remain in the store. After touring the premises for several minutes, Brittany selected the video "Getting Wet, the Last Howl." The video's status as material

---

Mark L. Shurtleff, Att'y Gen., Christine F. Soltis, Asst. Att'y Gen., Salt Lake City, for plaintiff.

W. Andrew McCullough, Midvale, for defendant.

---

NEHRING, Justice:

## INTRODUCTION

¶ 1 John Haltom was convicted of dealing in material harmful to a minor, a third degree felony under Utah Code section 76–10–1206 (2000),[1] and appealed his case to the court of appeals. Utah Code section 76–10–1206 renders criminal the sale of harmful material to a minor if the person making the sale "fail[s] to exercise reasonable care in ascertaining the proper age of a minor." The court of appeals interpreted "reasonable care" to be synonymous with ordinary negligence and concluded that the trial record contained adequate evidence of Mr. Haltom's negligence to affirm his conviction. We granted certiorari to consider whether the court of appeals was correct when it evaluated Mr. Haltom's conduct against the stan-

---

1. After the defendant was charged in 2000, the statute was amended to read that a violation occurs when a defendant acts recklessly or negligently in failing to ascertain the age of a minor-buyer before intentionally distributing material harmful to him or her. Utah Code Ann. § 76–10–1206 (2003 & Supp.2005). All citations to section 76–10–1206 in this opinion refer to the statute in effect in the year 2000 when Mr. Haltom was charged.

harmful to a minor was not disputed. *See* Utah Code Ann. § 76–10–1201(4), (6) (2003) (defining "harmful" and "material"). Brittany brought the video to the counter where Mr. Haltom was standing and sought to purchase it. Mr. Haltom asked Brittany for her identification, and she again produced her driver's license. Mr. Haltom compared Brittany's features with the photograph on the license and asked her to repeat her social security number. He asked her for her address and questioned her closely about it because Brittany first gave Mr. Haltom a street name instead of the directional coordinate number listed on her license. The sale of the video and Mr. Haltom's arrest followed.

¶ 5 The jury that convicted Mr. Haltom was instructed that he could not be found guilty unless he acted recklessly when he failed to accurately ascertain Brittany's age. At the court of appeals, Mr. Haltom claimed that, based on his own conduct and his assumptions about the age verification measures undertaken by the employee who confronted Brittany when she entered the store, the evidence fell short of establishing his recklessness. The State countered that the trial court erred when it instructed the jury that recklessness was the requisite mental state for the crime. The State argued that section 76–10–1206's "reasonable care" language made ordinary negligence the standard to establish culpability for the crime of dealing in material harmful to minors. The court of appeals agreed and found sufficient evidence of Mr. Haltom's negligence in the record to affirm his conviction. We granted certiorari to review whether the court of appeals correctly concluded that Mr. Haltom's ordinary negligence could result in his conviction of this third degree felony. We hold that the court of appeals was correct.

## ANALYSIS

■ ¶ 6 According to Mr. Haltom, the State cannot brand a person a felon for an act of ordinary negligence. So presented, Mr. Haltom's challenge does not ask us to resolve an ambiguity in section 76–10–1206. He concedes that an act of ordinary negligence may breach section 76–10–1206's affir-

mative duty to use "reasonable care" to authenticate the age of prospective purchasers of harmful material. This case, then, is not about whether the plain language of section 76–10–1206 communicates an intention to punish negligent conduct as a crime, because it clearly does. Rather, it is about whether, despite the statute's plain language, section 76–10–1206 must be interpreted to require a degree of culpability beyond ordinary negligence.

¶ 7 Mr. Haltom proposes three reasons why section 76–10–1206 cannot mean what it says; we find none to be persuasive. First, Mr. Haltom contends that Utah law governing criminal mental states generally forecloses bringing ordinary negligence, as opposed to criminal negligence, within its scope. Utah Code section 76–2–101, however, allows the Legislature to specify a mental state that is different from the most commonly used ones like knowing, reckless, or criminal negligence. Specifically, section 76–2–101 states that a person has not committed an offense unless (1) the conduct is prohibited by law and (2) the person "acts intentionally, knowingly, recklessly, with criminal negligence, *or with a mental state otherwise specified in the statute defining the offense,* as the definition of the offense requires" (emphasis added). The Legislature exercised this power legitimately when it inserted the "reasonable care" standard into the text of section 76–10–1206.

■ ¶ 8 Drawing on language from the Utah Court of Appeals' opinions, Mr. Haltom next contends that the ordinary negligence standard is limited to civil cases. He leans heavily on the statement made in *State v. Larsen* that " '[o]rdinary negligence, which is the basis for a civil action for damages, is not sufficient to constitute criminal negligence.' " 2000 UT App 106, ¶ 18, 999 P.2d 1252 (quoting *State v. Standiford,* 769 P.2d 254, 267 (Utah 1988)). We need not forswear the accuracy of this statement to reject Mr. Haltom's invocation of it. Ordinary negligence and criminal negligence are not the same. This is not to say that only criminal negligence may lead to criminal sanctions. Ordinary negligence is, of course, the basis for

civil damage actions. Its domain is not, however, bounded to civil actions.

¶ 9 Finally, Mr. Haltom attempts to stiffen his arguments with an appeal to constitutional law. Although his brief contains no direct citation to either the United States Constitution or the Utah Constitution, Mr. Haltom contends that United States Supreme Court precedent "surely support[s] the contention that, in the area of distribution of non-obscene and constitutionally protected adult materials, mere negligence in distributing to a minor is not a constitutionally sound standard." Mr. Haltom looks to *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), as the case most supportive of this contention. There, the Supreme Court read a scienter requirement into a section of the Protection of Children Against Sexual Exploitation Act of 1977. On its face, the text of the act would have permitted the conviction of persons who sold [in interstate commerce] visual depictions of minors engaged in explicit sexual conduct without regard to whether the defendant could reasonably discover the age of the persons depicted. *Id.* at 69, 115 S.Ct. 464. The Supreme Court found it appropriate to fill the scienter gap with the "knowing" mental state that Congress assigned to other provisions of the act. *Id.* at 78, 115 S.Ct. 464. The Supreme Court, however, did not go so far as to infer that holding a defendant criminally accountable for distributing adult materials to a minor through "mere negligence" would offend the United States Constitution. Indeed, the Court's statements suggest the opposite. It noted that little or no *mens rea* might be necessary to justify proscribing conduct in which "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain the victim's age." *Id.* at 72 n. 2, 115 S.Ct. 464. This describes precisely the encounter between Mr. Haltom and Brittany. In short, the United States Supreme Court has imposed no constitutional impediment to making merely negligent conduct criminal, and neither do we. Accordingly, we affirm the court of appeals.

¶ 10 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.