CORRIGAN, J.
(concurring in part and dissenting in part). I agree with the majority that the distribution or promotion of child sexually abusive material must be an intentional act. I respectfully dissent, however, from the majority’s application of intentionality. Under the majority view, the intentionality of defendant’s act is negated because he allegedly and erroneously believed that Comcast’s computer technicians would not “discover or view” the child sexually abusive material. The *472 majority’s erroneous analysis adds a heightened intent element that is not constitutionally required and is not found in the plain language of the statute.
I believe that the prosecution presented sufficient evidence that defendant distributed child sexually abusive material. Defendant distributed child sexually abusive material when he deliberately returned the company-owned computer to his employer, with full knowledge that the computer contained images that he knew to be child sexually abusive material. Accordingly, I would reverse the decision of the Court of Appeals and reinstate defendant’s conviction of distributing child sexually abusive material, MCL 750.145c(3).
While the majority properly imputes an intent to the distribution or promotion element contained in the statute, it is undisputed that defendant intentionally distributed the computer to his employer with the knowledge that the computer contained child sexually abusive material. Testimony adduced at trial reveals that, on the day defendant resigned his employment with Comcast, defendant was informed that he would have to return the company automobile and computer the same day. His supervisor, Christopher Williams, testified that he waited “45 minutes to an hour” before proceeding to defendant’s residence. While en route to defendant’s residence, defendant telephoned Williams and told Williams that “everything was ready.” The evidence revealed that, although given less time than requested, defendant voluntarily returned the computer to Comcast.
Moreover, the testimony of David Joseph revealed that defendant was aware that the prurient material was on the computer at the time the computer was returned. Joseph testified that defendant was not concerned that the material would be discovered on the *473 Comcast computer because defendant “didn’t feel as though there would be anybody that would go through those individual files” because defendant believed that “the hard drive would sort of just be wiped out.” Defendant further stated to Joseph that he “didn’t get the opportunity” to “expunge the material that he knew was offensive.”[1] The evidence adduced clearly establishes that defendant deliberately returned the computer to Comcast, knowing that it contained child sexually abusive material. Because the statute requires no more, this should end the inquiry.
The lead opinion casts the issue as whether defendant’s distribution of child sexually abusive material must be an intentional act; however, the opinion ignores the uncontroverted evidence that the distribution was in fact an intentional act. Instead, the opinion concludes that defendant did not intentionally distribute the child sexually abusive material because “defendant neither intended nor expected anyone at Comcast to discover or view the material.” Ante at 460 (emphasis added).
The lead opinion requires a heightened mens rea element that is not supported in the language of the statute and that is not constitutionally required. The opinion cites Morissette v United States,[2] Staples v United States,[3] and United States v X-Citement Video, Inc [4] in support of the claim that this additional element *474 is required. However, those cases do not hold that a defendant’s criminal intent is dependent on the particular response or reaction of a third party. In each case, the Supreme Court held that the prosecution was required to prove a defendant possessed criminal intent,[5] either with regard to the nature of the volitional act (Morissette) or with regard to the nature of the prohibited goods (Staples and X-Citement). In Morissette, for example, the Court required the prosecution to prove that the defendant had the intent to steal shell casings. In this case, the prosecution must prove that defendant had the general intent to distribute child pornography. See People v Nowack, 462 Mich 392, 405; 614 NW2d 78 (2000) (requiring “ ‘the intent to do the physical act’ ” for a general intent crime) (citation omitted). The lead opinion transforms defendant’s admittedly volitional act into a nonvolitional act on the basis of what defendant expected his employer to do.
Under the lead opinion, it is not enough that defendant intentionally distribute the computer, nor is it enough that defendant be aware of the presence of child pornography on the computer at the time of distribution. Rather, the opinion requires proof that defendant specifically intended a particular action or response on the part of the recipient.[6]
*475 It is unclear why the lead opinion requires that a defendant specifically intend his or her recipient to “discover or view” the prurient material in order to “distribute” the material. The plain meaning of the word “distribute” does not support such a requirement. The dictionary definition of “distribute” is: “1. to divide and give out in shares; allot. 2. to spread throughout a space or over an area; scatter. 3. to pass out or deliver: to distribute pamphlets. 4. to sell (merchandise) in a specified area.” Random House Webster’s College Dictionary (2d ed, 1997). Likewise, Black’s Law Dictionary (6th ed) defines “distribute” as “[t]o deal or divide out in proportion or in shares.” As the Court of Appeals correctly stated, the most applicable definition of “distribute” is to “pass out or deliver.” Nothing in either the lay dictionary or the legal dictionary gives any indication that “distribution” requires the recipient to view or appreciate the prurient nature of the material intentionally distributed.
Moreover, the lead opinion makes no effort to rationalize why defendant’s erroneous belief that no one at Comcast would “discover or view” the child pornography converts defendant’s volitional act into a nonvoli *476 tional act. Likewise, the opinion fails to explain why defendant’s criminal intent to distribute turns on how he believed Comcast would respond after the intentionally distributed material was received. While the lead opinion relies heavily on the claim that “the practice” at Comcast was to reformat the hard drive of the computer without reviewing any of the files, the testimony of Christopher Williams indicated that this practice was only done “on some of” the company computers. Williams testified that he inspected the contents of the computer “to see what it needed” before being “issued to another technician.” Cliff Radcliff testified that the process of completely erasing the contents of the hard drive was “lengthy,” and that “just cleaning out the unneeded files” shortened the cleaning process. The record does not reveal any company “policy” requiring the automatic erasure of computer hard drives without inspection. Indeed, even if such a “policy” did exist, the lead opinion fails to explain why defendant enjoyed any type of expectation interest in the continuation of this so-called “practice.”[7] That defendant believed that the material would not be discovered in the computer does not alter the fact that he knew that his employer would in fact receive the material. Thus, the prosecutor presented sufficient evidence for a conviction under MCL 750.145c(3).
Apart from the sufficiency of the evidence, Chief Justice TAYLOR raises in his concurrence for the first time in these proceedings the requirement of unanimity *477 in a conviction. Under this constitutional requirement, individual jurors must rely on the same actus reus, despite the presence of alternative acts, when they convict a defendant. See People v Cooks, 446 Mich 503, 510-511; 521 NW2d 275 (1994). Here, the Chief Justice’s concern is that the jury heard evidence regarding two different “acts” that might have met the statute and might have resulted in defendant’s conviction: (1) defendant’s return of the computer to his employer and (2) defendant’s participation in an Internet club that traded in child sexually abusive material.
While it may be possible that the jury could have failed to reach unanimity here, the issue has not been raised by defendant and is not before our Court. Additionally, as Chief Justice TAYLOR notes, this issue is unpreserved. Defendant neither requested a unanimity instruction nor objected to the instructions given.
An unpreserved constitutional error comes within the standard of review articulated in People v Carines, 460 Mich 750, 763-765; 597 NW2d 130 (1999). As the Chief Justice noted when he listed the requirements for showing that a plain error occurred that affected a substantial right, the defendant bears the evidentiary burden. Id. at 763 (recognizing that the burden of persuasion for a showing of prejudice was on the defendant). However, defendant has not established entitlement to relief under Carines because, at a minimum, defendant did not identify or argue the issue. Moreover, prejudice requires showing that the error affected the outcome. This differs from showing the possibility that the jury improperly failed to meet the unanimity requirement and requires a showing that the error did affect the outcome.
Here, the jury was instructed to consider only acts occurring on August 9, 2000, the day that defendant *478 relinquished his employment. The social worker’s testimony did not link defendant’s admission that he participated in an Internet club to any particular date. Also, the jury was instructed to consider only the evidence presented, and that the arguments made by the attorneys were not evidence. Thus, I believe that the Chief Justice has established, at best, the possibility of error; however, it has not been shown that claimed error affected the outcome of the case. More fundamentally, defendant must make this showing rather than rely on the Chief Justice to make it on an issue not preserved below and not argued before this Court.
In conclusion, the prosecutor presented sufficient evidence to convict defendant of distribution of child sexually abusive material under MCL 750.145c(3). While I agree that an intent requirement is properly imputed to the “distributes or promotes” element of the statute, the prosecution put forward sufficient evidence to sustain defendant’s conviction. Defendant intentionally delivered the computer to his employer, knowing that the computer contained child sexually abusive material at the time of its return. The majority errs in imputing a heightened requirement that defendant intend his recipient to “discover or view” the material. Because this requirement is neither constitutionally nor statutorily required, I dissent from its adoption. I would reverse the decision of the Court of Appeals and reinstate defendant’s conviction.
Weaver and Young, JJ., concurred with Corrigan, J.

 While defendant maintained to Joseph that he did not have the “opportunity” to “expunge” the child pornography, the testimony in the record indicates otherwise. The testimony of Sgt. Joseph Duke revealed that a “wiping program” was installed on the hard drive of defendant’s computer. Duke further testified that it would have taken less than fifteen minutes to completely eradicate the child pornography files from the computer.

 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952).

 511 US 600; 114 S Ct 1793; 128 L Ed 2d 608 (1994).

 513 US 64; 115 S Ct 464; 130 L Ed 2d 372 (1994).

 “Criminal intent” is defined as “[t]he intent to commit a crime ... Black’s Law Dictionary (5th ed). In this case, defendant intended to commit a crime, as defined by our Legislature: he knowingly delivered a computer that he knew to contain child pornography. The only intent defendant lacked in this case was the intent to get caught.

 Those on the lead opinion believe that this specific intent is required, else all the “Comcast employees” who handled the computer files could be convicted of violating the statute, despite having “no criminal intent.” Ante at 458 and 459. However, even under the standard articulated in the lead opinion, all the witnesses could still be convicted of violating the statute. Each one of the Comcast employees intentionally distributed the *475 computer to his superior, knowing that the computer contained child pornography, and intending for the recipient to “discover or view” the material.
Although not directly applicable here, the Legislature has already taken steps to prevent the prosecution of people deemed to have no criminal intent. For example, MCL 752.367 contains several exemptions to MCL 750.145c(3). MCL 750.145c has been amended by 2002 PA 629 and 2004 PA 478. The most recent amendments of MCL 750.145c provide both civil and criminal immunity from a charge of possession to computer technicians acting within the scope of their employment. MCL 750.145c(4)(a) and (9). The Legislature has also taken steps to provide criminal immunity to police officers acting within the scope of their employment. MCL 750.145c(4)(b). It is within the purview of the Legislature, not the judiciary, to extend this immunity to the distribution of child pornography.

 The lead opinion also notes that defendant had “no expectation” that defendant’s employer would “search for and find” the child pornography. Yet this ignores the uncontroverted evidence that defendant knowingly delivered the company computer to computer technicians, who would have no difficulty locating the images “in subfolders seven directory levels down.” Indeed, one officer located the materials without difficulty, despite his inexperience with computer investigations.