UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-4519

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DANNY BRACHTENDORF,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Martin K. Reidinger, District Judge. (3:07-cr-00250-MR-1)

Argued: March 24, 2009          Decided: August 24, 2009

Before DUNCAN and AGEE, Circuit Judges, and David A. FABER, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Cecilia Oseguera, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Mark Andrew Jones, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Claire J. Rauscher, Executive Director, Ross H. Richardson, Emily Marroquin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Danny Brachtendorf, a German citizen, appeals from a conviction and sentence imposed in the Western District of North Carolina for illegal entry into the United States after deportation. Finding no reversible error, we affirm.

I.

On August 5, 2000, Brachtendorf, who was living in Oakdale, Minnesota, sent to an undercover Ohio detective by e-mail a photograph of a juvenile female undressed and exposing her vaginal area. The hard drive of a computer subsequently seized from Brachtendorf's residence under a search warrant contained additional images of children in suggestive sexual poses. One of the items was titled "World Children Porn Archive" and depicted juveniles engaged in sexual intercourse.

Brachtendorf pleaded guilty in the state court to Count Two of a two-count complaint charging him with violating Minnesota Statue § 617.247, Subdivision 4, Possession of Pictorial Representations of Minors, which reads in pertinent part as follows:

> (a) A person who possesses a pornographic work or a computer disk or computer or other electronic, magnetic or optical storage system or a storage system of any other type, containing a pornographic work, knowing or with reason to know its content and character, is guilty of a felony and may be sentenced to imprisonment for not more than five years and a fine of not more than $5,000 for a first offense . . . .

2

Minnesota Statute § 617.246, Subdivision 1(f) defines "pornographic work" as follows:

"Pornographic work" means:

(1) an original or reproduction of a picture, film photograph, negative, slide, videotape, videodisc, or drawing of a sexual performance involving a minor; or

(2) any visual depiction, including any photograph, film, video, picture, drawing, negative, slide, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means that:

(i) uses a minor to depict actual or simulated sexual conduct;
(ii) has been created, adapted, or modified to appear that an identifiable minor is engaging in sexual conduct; or
(iii) is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexual conduct.

For the purposes of this paragraph, an identifiable minor is a person who was a minor at the time the depiction was created or altered, whose image is used to create the visual depiction.

During the state plea hearing, Brachtendorf acknowledged that the authorities had found between two and five obscene pictures of children on his computer. When asked, "And you had some knowledge that those were there?" Brachtendorf responded, "I had some knowledge of it." (JA 104.) As a result of this state conviction Brachtendorf was ordered deported on September 1, 2004.

3

Subsequently, on October 17, 2007, Brachtendorf was arrested at the Charlotte-Douglas International Airport attempting to re-enter the country. He was traveling with his wife and children, who are all U.S. Citizens, ostensibly just to "drop them off" and return to Germany. A federal criminal complaint was filed alleging that Brachtendorf had attempted to re-enter the United States after having been deported, in violation of 8 U.S.C. § 1326(a). Although the complaint said nothing about the prior aggravating conviction, the affidavit accompanying the complaint sets forth details about the Minnesota conviction. An indictment was returned on October 24, 2007, charging Brachtendorf under 8 U.S.C. § 1326(a), with no mention of a sentencing enhancement under § 1326(b) for a prior aggravated felony conviction.

Brachtendorf pleaded guilty before the magistrate judge on January 29, 2008, without benefit of a plea agreement. No mention was made of the prior conviction during the plea hearing, and the magistrate judge advised appellant that the charge he was pleading to carried "a two year maximum term of imprisonment and a fine of up to $250,000." (JA 15.) No objections were made by either side to the magistrate judge's description of the maximum penalties.

The Presentence Report ("PSR") prepared by the probation office gave the statutory maximum sentence as a term of

4

imprisonment for not more than 20 years pursuant to 8 U.S.C. § 1326(b)(2), and calculated the base offense level as 8 under United States Sentencing Guidelines Manual § 2L1.2. The PSR recommended a 16-level increase under § 2L1.2(b)(1)(A)(iv), because the appellant "was previously deported after having been convicted of a felony that is a child pornography offense."[1] (JA 68.) The court applied this increase, overruling Brachtendorf's objection that the government had not demonstrated that the prior conviction constituted a child pornography offense under the guidelines. Brachtendorf received a three-level downward adjustment for acceptance of responsibility, for a total offense level of 21. Although his criminal history category was calculated at II, for a sentencing range of 41 to 51 months, the district court departed downward to category I on the basis that category II overrepresented his criminal history.[2] His revised

---

[1] Under this guidelines section, a "'Child pornography offense' means (I) an offense described in 18 U.S.C. § 2251, § 2251(a), § 2252, § 2252A, or § 2260; or (II) an offense under state or local law consisting of conduct that would have been an offense under any such section if the offense had occurred within the special maritime and territorial jurisdiction of the United States." U.S. Sentencing Guidelines Manual § 2L1.2, App. Note (B)(iii).

[2] Appellant's criminal history was originally calculated at category II because he committed the instant offense while on supervised probation. The court concluded that the category should be reduced, however, because appellant "was unable to complete all of the requirements regarding his probation in Minnesota because he had been deported." (JA 46.)

guideline range was then 37 to 46 months, and he received a sentence of 37 months, making no objection that it was in excess of the statutory maximum for the underlying conviction.

Brachtendorf raises three points on appeal. First, he contends that the district court incorrectly determined that his prior Minnesota conviction was an aggravated felony and a child pornography offense warranting a 16-level increase under 8 U.S.C. § 1326(b)(2) and U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(iv). Second, he maintains the court erred in imposing a sentence above the two-year statutory maximum provided by the unenhanced statute of conviction. Third, he argues that the court could not properly impose a sentence above the unenhanced statutory maximum because he was told at his plea hearing that the maximum penalty he faced was two years in prison.

## II.

In considering the legality of Brachtendorf's sentence under his first assignment of error, the court reviews "legal questions, including the interpretation of the guidelines, de novo, while factual findings are reviewed for clear error." United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006). His other two contentions, asserted for the first time on appeal, are subject to the plain error standard. United States v. Higgs, 353 F.3d 281, 309 (4th Cir. 2003); Fed. R. Crim. P.

6

52(b).  Plain error involves (1) an error, (2) which is plain, (3), which affects substantial rights, and (4) which seriously affects the fairness, integrity or public reputation of judicial proceedings.  United States v. Brewer, 1 F.3d 1430, 1434-35 (4th Cir. 1993) (citing United States v. Olano, 507 U.S. 725, 732-737 (1993)).  The burden is on the defendant to prove that the error was not harmless, and the requirement that an error affect substantial rights "typically means that the defendant is prejudiced by the error in that it affected the outcome of the proceedings."  United States v. Stewart, 256 F.3d 231, 252 (4th Cir. 2001).

## III.

### A.

The enhancement under 8 U.S.C. § 1326(b)(2) and U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(iv) may only be applied if the Minnesota conviction fits the definition for the offenses described in 18 U.S.C. § 2251, 2251A, 2252, 2252A, or 2260, apart from the jurisdictional requirements of those statutes.  The district court made no specific finding as to which offense applied, instead concluding simply that Brachtendorf's prior offense was a child pornography offense. The relevant statute here is 18 U.S.C. § 2252(a)(4), which prohibits possession of "1 or more books, magazines, periodicals, films, video tapes, or other matter which contain

7

any visual depiction . . . if . . . the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct[,] and such visual depiction is of such conduct."

Brachtendorf contends that the Minnesota statute encompasses a broader range of conduct than does § 2252, as the federal statute does not extend to a "drawing" generally, or to a "drawing of a sexual performance involving a minor." (Appellant's brief at 17.)

We disagree with Brachtendorf's characterization of the Minnesota statute as broader than the federal statute. The Minnesota statute defines "pornographic work" to include "an original or reproduction of a picture, film, photograph, negative, slide, videotape, videodisc, or drawing of a sexual performance involving a minor" and "any visual depiction, including any photograph, film, video, picture, drawing, negative, slide, or computer-generated image or picture . . . that . . . uses a minor to depict actual or simulated sexual conduct; . . . has been created, adapted, or modified to appear that an identifiable minor is engaging in sexual conduct; or . . . conveys the impression that the material is or contains a visual depiction of a minor engaging in sexual conduct." Minn. Stat. § 617.246, Subd. 1(f).

8

The federal statute's prohibited material is set forth as "books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction [where] the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct [and] such visual depiction is of such conduct." 18 U.S.C. § 2252(a)(4)(A) (emphasis added). The federal statute's prohibited material extends to any visual depictions – including a drawing – that satisfied the remaining requirements of the statute. Accordingly, the mere fact that the Minnesota statute specifically lists a "drawing" among the prohibited material would not preclude a drawing from being prohibited material under the federal statute. While both the Minnesota and federal statute are subject to constitutional limitations regarding whether the depicted image constitutes "child pornography," both statutes allow for the medium to be a "drawing." Accordingly, Brachtendorf's argument lacks merit.[3]

---

[3] Brachtendorf, citing United States v. X-Citement Video, Inc., 513 U.S. 64 (1994), argues that the mens rea requirement of the Minnesota statute under which he was convicted is lesser than that of 18 U.S.C. § 2252, which requires that a defendant act "knowingly." It is unnecessary to address this particular argument because Brachtendorf's admission during the course of the Minnesota proceedings that he had knowledge of the obscene pictures found on his computer satisfies the mens rea requirement of the federal statute.

B.

The indictment in this case charged Brachtendorf with a violation of "§ 1362(a)" without reference to subsection (b) of the statute. Under Almendarez-Torres v. United States, 523 U.S. 224 (1998), a statutory section like § 1362(b)(2) is considered a "penalty provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime. Consequently, neither the statute nor the Constitution requires the Government to charge the factor that it mentions, an earlier conviction, in the indictment." Id. at 226-27.

Brachtendorf attempts to distinguish Almendarez-Torres on the basis that the indictment in that case simply charged a violation of "Section 1326" without reference to either subsection. (Appellant's brief at 26.) Moreover, it appears that the prior aggravated felonies at issue in Almendarez–Torres were discussed at that defendant's plea hearing, whereas there was no mention of them at Brachtendorf's. The distinction Brachtendorf tries to make is misplaced, given that subsections (a) and (b) do not set forth different offenses. As Almendarez-Torres holds, subsection (b) is a *penalty* provision, and someone sentenced under it is necessarily convicted under subsection (a), whether the indictment specifies it or not. See United States v. Cheek, 415 F.3d 349, 352 (4th Cir. 2005)(reaffirming

10

validity of Almendarez-Torres following United States v. Booker, 543 U.S. 220 (2005)).

C.

It is well established that a court must inform a defendant of the statutory maximum and mandatory minimum sentences he faces before accepting his guilty plea. Fed. R. Crim. P. 11(b)(1); United States v. Good, 25 F.3d 218, 221 (4th Cir. 1994). The Fourth Circuit has found error in cases in which the district court did not do so at a plea hearing, and has further held that setting forth the statutory sentences in a PSR does not cure the error. United States v. Goins, 51 F.3d 400, 405 (4th Cir. 1995). It does not follow that the error is reversible, however, where the standard of review is for plain error.

Essentially, Brachtendorf would have to prove under the Olano plain error standard that he would not have pleaded guilty had the magistrate judge properly informed him of the 20-year maximum penalty he faced. See United States v. Dominguez-Benitez, 542 U.S. 74, 81 (2004).

> When determining whether a Rule 11 error affected a defendant's substantial rights, we consider what information was provided to the defendant when he pleaded guilty, what additional information would have been provided by a proper rule 11 colloquy, and how the additional information would have affected the decision to plead guilty.

United States v. Hairston, 522 F.3d 336, 341 (4th Cir. 2008).

11

The burden a defendant faces under Dominquez-Benitez "should not be too easy":

> First, the standard should enforce the policies that underpin Rule 52(b) generally, to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error. Second, it should respect the particular importance of the finality of guilty pleas, which usually rest, after all, on a defendant's profession of guilt in open court, and are indispensable in the operation of the modern criminal justice system. And, in this case . . . the violation claimed was of Rule 11, not of due process.

Dominquez-Benitez, 542 U.S. at 82-83.

In this case, Brachtendorf was aware of the aggravating felony, as the federal criminal complaint described both the prior conviction and his subsequent deportation. He thus had notice that the conviction was relevant to this current case. Additionally, the evidence against him was overwhelming, which is relevant because "one can fairly ask a defendant seeking to withdraw his plea what he might ever have thought he could gain by going to trial." Id. at 85. Additionally, Brachtendorf received a lenient sentence – the court departed downward from the guidelines finding that his criminal history was overrepresented. Id. Because appellant has failed to carry his burden to show that he would not have pleaded guilty if properly advised, the inaccurate advice given him at his plea hearing does not amount to a reversible error under the plain error standard.

For all these reasons, the judgment below is

AFFIRMED.