# Duty to Report Suspected Child
# Abuse Under 42 U.S.C. § 13031

Under 42 U.S.C. § 13031—a provision of the Victims of Child Abuse Act of 1990—all covered professionals who learn of suspected child abuse while engaged in enumerated activities and professions on federal land or in federal facilities must report that abuse, regardless of where the suspected victim is cared for or resides.

The fact that a patient has viewed child pornography may "give reason to suspect that a child has suffered an incident of child abuse" under the statute, and a covered professional is not relieved of an obligation to report the possible abuse simply because neither the covered professional nor the patient knows the identity of the child depicted in the pornography.

May 29, 2012

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF VETERANS AFFAIRS*

Section 13031 of title 42, a provision in the Victims of Child Abuse Act of 1990 ("VCAA" or "Act"), Pub. L. No. 101-647, tit. II, § 226, 104 Stat. 4789, 4792, 4806, requires persons engaged in certain activities and professions on federal lands or in federal facilities to report "facts that give reason to suspect that a child has suffered an incident of child abuse" if they learn such facts in the course of their professional activities. Failure to make a report required by section 13031 could subject such persons to criminal penalties. *See* 18 U.S.C. § 2258. You have raised two questions about the scope of section 13031. *See* Letter for Eric Holder, Attorney General, from Will A. Gunn, General Counsel, Department of Veterans Affairs (Nov. 9, 2009) ("VA Letter").

First, you have asked whether section 13031's reporting requirement is limited to situations in which the suspected victim of child abuse is cared for or resides on federal land or in a federal facility. We conclude that it is not. Instead, under the VCAA, all persons who learn of suspected child abuse (as defined by the Act) while engaged in the enumerated activities and professions on federal land or in federal facilities must report that

---

* Editor's Note: After this opinion was issued, 42 U.S.C. § 13031 was reclassified and renumbered as 34 U.S.C. § 20341. The statute has also repeatedly been amended by Congress since 2012, but not in any way that appears to undermine the analysis or conclusions reached by this opinion.

abuse, regardless of where the suspected victim is cared for or resides. We recognize that the scope of some of the statutory language may be ambiguous, and that narrower readings of the reporting requirement find some support in certain of the statute's provisions. But we believe that section 13031, read as a whole and in light of its purpose, is best interpreted broadly.

Second, you have inquired whether the VCAA's reporting obligation is triggered when a person covered by section 13031 learns that a patient under his or her care has viewed child pornography, even if the person does not know, and has no reason to believe the patient knows, the identity of the child or children depicted in the pornography. We conclude that the fact that a patient has viewed child pornography may be a "fact[] . . . giv[ing] reason to suspect that a child has suffered an incident of child abuse" under section 13031, and that the statute does not require a covered professional to possess knowledge of the identity of an affected child in order for the reporting duty to apply.

We have concluded that the interpretive questions you have raised can be resolved using ordinary tools of statutory construction, so we have not applied the rule of lenity even though the VCAA provides for criminal penalties. We note, however, that a person who fails to make a report required by section 13031 will not necessarily be subject to criminal penalties under the statute. The criminal penalty provision contains no explicit *mens rea* requirement, and thus one would almost certainly be inferred. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994). While we need not decide what *mens rea* would apply, a court construing section 13031 might well require a defendant to have known that a report was legally required before imposing criminal liability for a failure to report. Such a reading would, among other things, address any concern about imposing criminal liability on persons who lacked clear notice that the failure to report in their particular circumstances was unlawful.

## I.

Congress enacted the VCAA, including section 13031, as title II of the Crime Control Act of 1990. Pub. L. No. 101-647, §§ 201–255, 104 Stat. at 4792–4815. Section 13031 requires persons on "Federal land or in a

federally operated (or contracted) facility" who are engaged in certain activities—individuals the statute calls "[c]overed professionals"—to report suspected incidents of child abuse. 42 U.S.C. § 13031(a)–(b) (2006). Specifically, section 13031(a) provides that

> [a] person who, while engaged in a professional capacity or activity described in subsection (b) of this section on Federal land or in a federally operated (or contracted) facility, learns of facts that give reason to suspect that a child has suffered an incident of child abuse, shall as soon as possible make a report of the suspected abuse to the agency designated under subsection (d) of this section.[1]

Section 13031(d) directs the Attorney General to designate the agency or agencies to which the reports described in subsection (a) should be made. It states:

> For all Federal lands and all federally operated (or contracted) facilities in which children are cared for or reside, the Attorney General shall designate an agency to receive and investigate the reports described in subsection (a) of this section. By formal written agreement, the designated agency may be a non-Federal agency. When

---

[1] Subsection (b) provides:

Persons engaged in the following professions and activities are subject to the requirements of subsection (a) of this section:

(1) Physicians, dentists, medical residents or interns, hospital personnel and administrators, nurses, health care practitioners, chiropractors, osteopaths, pharmacists, optometrists, podiatrists, emergency medical technicians, ambulance drivers, undertakers, coroners, medical examiners, alcohol or drug treatment personnel, and persons performing a healing role or practicing the healing arts.

(2) Psychologists, psychiatrists, and mental health professionals.

(3) Social workers, licensed or unlicensed marriage, family, and individual counselors.

(4) Teachers, teacher's aides or assistants, school counselors and guidance personnel, school officials, and school administrators.

(5) Child care workers and administrators.

(6) Law enforcement personnel, probation officers, criminal prosecutors, and juvenile rehabilitation or detention facility employees.

(7) Foster parents.

(8) Commercial film and photo processors.

such reports are received by social services or health care agencies, and involve allegations of sexual abuse, serious physical injury, or life-threatening neglect of a child, there shall be an immediate referral of the report to a law enforcement agency with authority to take emergency action to protect the child. All reports received shall be promptly investigated, and whenever appropriate, investigations shall be conducted jointly by social services and law enforcement personnel, with a view toward avoiding unnecessary multiple interviews with the child.

Consistent with this directive, the Attorney General has issued a regulation designating the agencies authorized to receive and investigate reports of child abuse submitted under section 13031(a). That rule, which appears as 28 C.F.R. § 81.2 (2010), provides:

Reports of child abuse required by 42 U.S.C. 13031 shall be made to the local law enforcement agency or local child protective services agency that has jurisdiction to investigate reports of child abuse or to protect child abuse victims in the land area or facility in question. Such agencies are hereby respectively designated as the agencies to receive and investigate such reports, pursuant to 42 U.S.C. 13031(d), with respect to federal lands and federally operated or contracted facilities within their respective jurisdictions, provided that such agencies, if non-federal, enter into formal written agreements to do so with the Attorney General, her delegate, or a federal agency with jurisdiction for the area or facility in question. If the child abuse reported by the covered professional pursuant to 42 U.S.C. 13031 occurred outside the federal area or facility in question, the designated local law enforcement agency or local child protective services agency receiving the report shall immediately forward the matter to the appropriate authority with jurisdiction outside the federal area in question.

Att'y Gen. Order No. 2009-96, 61 Fed. Reg. 7704 (Feb. 29, 1996).

Under section 13031, "the term 'child abuse' means the physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child." 42 U.S.C. § 13031(c)(1). Section 13031 further explains that "the term "sexual abuse" includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another

person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." *Id.* § 13031(c)(4). "[T]he term 'exploitation' means child pornography or child prostitution." *Id.* § 13031(c)(6).

Two other provisions in section 13031 are also relevant. Section 13031(e) provides that "[i]n every federally operated (or contracted) facility, and on all Federal lands, a standard written reporting form, with instructions, shall be disseminated to all mandated reporter groups," and makes clear as well that although "[u]se of the form shall be encouraged, . . . its use shall not take the place of the immediate making of oral reports . . . when circumstances dictate." Section 13031(h) provides that "[a]ll individuals in the occupations listed in subsection (b)(1) of this section who work on Federal lands, or are employed in federally operated (or contracted) facilities, shall receive periodic training in the obligation to report, as well as in the identification of abused and neglected children."

Finally, in section 226(g)(1) of the VCAA (codified as amended at 18 U.S.C. § 2258), Congress criminalized the failure to report child abuse as mandated by 42 U.S.C. § 13031. The criminal provision states:

> A person who, while engaged in a professional capacity or activity described in subsection (b) of section 226 of the Victims of Child Abuse Act of 1990 [42 U.S.C. § 13031] on Federal land or in a federally operated (or contracted) facility, learns of facts that give reason to suspect that a child has suffered an incident of child abuse, as defined in subsection (c) of that section, and fails to make a timely report as required by subsection (a) of that section, shall be fined under this title or imprisoned not more than 1 year or both.

18 U.S.C. § 2258 (2006). When the VCAA was originally enacted, the offense was a Class B misdemeanor punishable by six months of imprisonment, Pub. L. No. 101-647, § 226(g)(1), 104 Stat. at 4808; *see* 18 U.S.C. § 3581(b)(7) (1988), but in 2006, Congress amended 18 U.S.C. § 2258 by raising the maximum punishment from six months to one year of imprisonment. Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 209, 120 Stat. 587, 615. Other than this change, Congress has amended neither 18 U.S.C. § 2258 nor 42 U.S.C. § 13031 since it enacted the provisions in 1990.

## II.

### A.

We first consider the circumstances under which covered professionals must report suspected child abuse under the VCAA.[2] We conclude that, although no interpretation of section 13031 perfectly reconciles all of its provisions, section 13031 is best read to impose a reporting obligation on all persons who, while engaged in the covered professions and activities on federal lands or in federal facilities, learn of facts that give reason to suspect that child abuse has occurred, regardless of where the abuse might have occurred or where the suspected victim is cared for or resides. In reaching this conclusion, we considered the construction of section 13031 that you propose, as well as two other readings that would narrow the reporting obligation. As explained below, while all of these narrowing constructions find support in certain provisions of the statute, they are also in significant tension with other parts of section 13031, leading us to conclude that section 13031 "'as a whole'" is best read to impose the broad reporting obligation described above. *See United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135 (2007) (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991)).

Section 13031(a) sets forth the reporting requirement that is the VCAA's core directive. It provides that a covered professional engaged in a covered activity "on Federal land or in a federally operated (or contracted) facility" who "learns of facts that give reason to suspect that a child

---

[2] In preparing our opinion, we considered views provided by your office, the Department of Justice's Criminal Division, the Department of Defense, the Department of State, and the Attorney General's Advisory Council. *See* E-mail for Jeannie S. Rhee, Deputy Assistant Attorney General, Office of Legal Counsel ("OLC"), from Alexandra Gelber, Criminal Division (Jan. 15, 2010, 10:15 AM); E-mail for Jeannie S. Rhee, Deputy Assistant Attorney General, OLC, from John Casciotti, Office of General Counsel, Department of Defense (Feb. 26, 2010, 5:02 PM); E-mail for Jeannie S. Rhee, Deputy Assistant Attorney General, OLC, from Robert Choo, Office of the Legal Adviser, Department of State (July 21, 2010, 2:35 PM); E-mail for Cristina M. Rodríguez, Deputy Assistant Attorney General et al., from Carter Stewart, United States Attorney for the Southern District of Ohio (Feb. 3, 2012, 6:45 PM). We also solicited the opinion of the Department of Health and Human Services, which indicated that it "has no view about the interpretation advanced by the Veterans Administration." E-mail for Jeannie S. Rhee, Deputy Assistant Attorney General, OLC, from Elizabeth J. Gianturco, Senior Advisor to the General Counsel, Department of Health and Human Services (Apr. 21, 2010, 2:16 PM).

has suffered an incident of child abuse, shall as soon as possible make a report of the suspected abuse to the agency designated under subsection (d) of this section." On its face, this is a broad provision: It applies to covered professionals on all federal lands and in all federal facilities and requires a report as soon as possible no matter where the suspected child victim resides, is cared for, or may have been abused. The express incorporation of subsection (d), however, gives rise to doubt about the scope of subsection (a)'s reporting requirement, because subsection (d) appears to require the Attorney General to designate an agency to receive reports only "[f]or all Federal lands and all federally operated (or contracted) facilities in which children are cared for or reside." The central question, then, is whether the cross-reference to subsection (d) limits subsection (a)'s otherwise broad language, and if so, in what way.[3]

You suggest that it would be reasonable to read the reporting requirement as applying "only with regard to suspected abuse of children residing or cared for on Federal lands and in federally operated and contracted facilities," because "42 U.S.C. § 13031(a) requires reporting only to agencies as designated under subsection (d), and subsection (d) provides for designation only of agencies to receive and investigate reports for Federal reservations in which children are cared for or reside." VA Letter at 2. In other words, you maintain that, because subsection (d) specifies agencies to receive reports only for "Federal lands and . . . facilities in which children are cared for or reside," Congress intended to require reports only for suspected abuse of children who reside or are cared for on federal lands or in federal facilities. Moreover, it might be argued that when the Attorney General designates an agency to receive reports for federal lands and facilities in which children are not cared for and do not reside, he is not making designations "under" subsection (d), because that provision expressly addresses designations only for federal lands and facilities "in which children are cared for or reside." This construction of section 13031, in your view, would appropriately align the location of the

---

[3] We assume for purposes of this opinion, as do you, that the phrase "in which children are cared for or reside" modifies both "Federal lands" and "federally operated (or contracted) facilities." VA Letter at 2 ("subsection (d) provides for designation . . . of agencies to receive and investigate reports for Federal reservations in which children are cared for or reside"). The Attorney General's regulations do not address the issue, 28 C.F.R. pt. 81 (2010), nor do any of the submissions we received.

suspected child victims with subsection (d)'s designation of agencies to receive reports.

This interpretation is not without some force, but we believe it is inconsistent with other subsections of section 13031 and with the statute viewed in its entirety. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). As noted above, Congress phrased subsection (a) using broad language that contains no limitation on the federal lands or facilities in which reporting is required, and no residence-based limitation on the suspected child victims whose potential abuse can give rise to a reporting obligation. In fact, section 13031 as a whole is devoid of any language that explicitly limits the suspected child victims whose potential abuse triggers the reporting requirement.

If Congress had intended to limit the scope of the VCAA's reporting requirement in the significant manner you propose, an isolated cross-reference to subsection (d) would have been an obscure and backhanded way to do so. *Cf. Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 170–71 (1971) ("To accept the Board's reasoning that the union's § 302(c)(5) responsibilities dictate the scope of the § 8(a)(5) collective-bargaining obligation would be to allow the tail to wag the dog."). Subsection (d) is entitled "[a]gency designated to receive report and action to be taken," and purports to address only the agencies to which reports must be made, not the professionals who must make reports or the children who may be the subject of reports. Nothing in subsection (d) expressly narrows the scope of potential child victims covered by the reporting requirement. *Cf. Comm'r v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision.").

Indeed, subsection (d) does not say that the Attorney General may only designate agencies to receive reports for federal lands and facilities "in which children are cared for or reside." It simply specifies that the Attorney General "shall designate an agency to receive and investigate" reports for such lands and facilities, saying nothing about what the Attorney General should do with respect to other federal lands and facilities. And in

implementing this authority, the Attorney General has in fact specified reporting locations for all covered professionals who learn of any covered abuse while engaged in their profession or activity on any federal land or facility, not solely abuse connected to lands or facilities where children are cared for or reside. *See* 28 C.F.R. § 81.2.

The broad reading of the reporting requirement gains further support from two other provisions in the VCAA that unambiguously apply to all federal lands and facilities, not just those where children are cared for or reside. Subsection (e) requires dissemination of a standard written reporting form to "all mandated reporter groups" "[i]n every federally operated (or contracted) facility, and on all Federal lands." In other words, reporting forms must be disseminated not only to federal lands and facilities where children are cared for or reside, but to all federal lands and facilities. This provision thus appears to presume that mandated reporter groups exist in every federally operated or contracted facility and on all federal lands. This presumption, in turn, strongly suggests that Congress intended to require the reporting of abuse discovered by covered professionals in the course of their covered activities on all federal lands and in all federal facilities, not simply abuse that occurs on the lands and in the facilities where children are cared for or reside.

Subsection (h) embodies a similar premise. That provision, entitled "[t]raining of prospective reporters," requires "periodic training in the obligation to report, as well as in the identification of abused and neglected children," for "[a]ll individuals in the occupations listed in subsection (b)(1) of this section who work on Federal lands, or are employed in federally operated (or contracted) facilities." Again, this provision appears to assume that all individuals who work in the listed occupations on all federal lands and in all federal facilities—not solely those where children are cared for or reside—might encounter suspected abuse that must be reported. This further suggests that Congress intended to require covered professionals working on *all* federal lands and in *all* federal facilities to report suspected abuse, because the across-the-board training requirement otherwise would serve no clear purpose.

The broad reading of the reporting requirement is also consistent with the scope of subsection (b). Subsection (b)'s specific list of relevant professions and activities echoes the mandatory reporter provisions of numerous state laws requiring the reporting of abuse. *Compare* 42 U.S.C.

§ 13031(b) (list set forth *supra* note 1), *with* Child Welfare Information Gateway, Dep't of Health & Human Services, *Mandatory Reporters of Child Abuse and Neglect: Summary of State Laws* at 2 (Apr. 2010) ("*Summary of State Laws*"), http://www.childwelfare.gov/systemwide/ laws_policies/statutes/manda.pdf (last visted ca. May 2012). The reporting requirement, as defined in subsections (a) and (b), focuses on the nature of the covered professional's employment activity, not the place where the child victim is cared for or resides. Indeed, many of the covered professionals—such as film processors, coroners, and ambulance drivers—would likely learn of suspected child abuse in circumstances that provide no indication whether the child victim is cared for or resides on federal lands or in a federal facility.

The VCAA's legislative history also reflects a congressional intent to enact a far-reaching reporting obligation that would protect as many victims of suspected child abuse as possible. Senator Biden, a co-sponsor of the legislation, called it a "sweeping title aimed at mak[ing] our criminal justice system more effective in cracking down on child abusers, and more gentle in dealing with the child abuse victims." 136 Cong. Rec. 36,312 (1990); *see also id.* at 16,240 (statement of Sen. Biden) ("[Y]ou, the innocent bystander, you, the third party, you have a legal obligation to report when you observe or have reason to believe that an abuse of an innocent child takes place."); *id.* at 16,238 (statement of co-sponsor Sen. Reid) ("A critical step in protecting our children is to identify child victims . . . before it is too late. My proposed bill of rights requires certain professionals to identify who they suspect are victims of abuse and neglect.").

As we recognize above, our interpretation of the statute does not reconcile perfectly all of the statute's parts, specifically subsection (a)'s cross-reference to subsection (d). Read in context, however, we think subsection (d) need not and should not be construed to limit either the scope of the reporting requirement under subsection (a) or the Attorney General's authority to designate agencies to receive the required reports. Such an interpretation would be in marked tension with the breadth of subsection (a)'s terms, the requirements of subsections (e) and (h), the scope of subsection (b), and the general evidence of Congress's intent.

The two additional narrowing constructions we identified also fail to make better sense of the statute than the broad reading we have adopted.

We first considered whether the reporting requirement should be limited to situations involving children who had been abused on federal lands or facilities. But under this reading, as under your suggested reading, we would have to conclude that Congress acted to limit the apparently broad reporting requirement set forth in subsection (a) through the oblique mechanism of a cross-reference to subsection (d). What is more, this reading, too, would make it difficult to explain the breadth of the mandated training and provision of forms on all federal lands and in all federal facilities in subsections (e) and (h) and the scope of covered professionals in subsection (b). Further, and significantly, this reading would narrow the class of children whose suspected abuse could give rise to a required report, despite the fact that *no* provision in the statute—including subsection (d)—addresses the location of the suspected abuse.

We also considered a third alternative reading—one that would require reporting only from covered professionals who engage in the specified professions and activities on federal lands or in federal facilities where children are cared for or may have been abused. This construction, too, would rest on a presumption that Congress intended to limit the scope of the reporting obligation through a single cross-reference to subsection (d). Further, it would be in particularly sharp tension with subsections (e) and (h), which require training and distributing reporting forms on *all* federal lands and in *all* federal facilities, not just where children are cared for or reside. This reading would also produce an anomalous result—a professional's obligation to report facts giving reason to suspect that a child unconnected with federal lands or facilities had been abused would turn on the apparently unrelated question whether other children happened to be cared for or reside on the lands or in the facility where the professional works. In our judgment, these difficulties make this interpretation less coherent than the broad reading we have given the statute.

We therefore conclude that the best reading of section 13031 as a whole is that a covered professional is required to report suspected child abuse discovered while engaged in the professions or occupations specified in subsection (b) on federal lands or in federal facilities.[4]

---

[4] This interpretation of the reporting requirement is consistent with the law of most states. "All States, the District of Columbia, [and all U.S. territories] have statutes identifying persons who are required to report child maltreatment under specific circumstances," and, in most states, the list of individuals with reporting obligations closely resembles

## B.

We next consider whether "the mere knowledge that a patient has viewed child pornography [would] trigger a covered professional's duty to report the suspected child abuse, even if he or she does not know the identity of the child or children depicted and has no reason to believe the patient knew their identity." VA Letter at 2.[5] In raising this question, you point to language in a later part of subsection (d) providing that, when reports required by subsection (a) are "received by social services or health care agencies, and involve allegations of sexual abuse, serious physical injury, or life-threatening neglect of a child, there shall be an immediate referral of the report to a law enforcement agency with authority to take emergency action to protect the child." Based on subsection (d)'s reference to "the" child, you note that, while it is clear that "the [reporting] requirement applies when the identity of an abused child can be determined by the covered provider so that the law-enforcement agency with jurisdiction can be identified, . . . it is less clear . . . that it applies when that is not the case." VA Letter at 2.[6] We conclude, however, that the text of the statute covers the situation you describe.

---

the list of covered professionals in section 13031. *Summary of State Laws* at 1–2. In fact, some jurisdictions require *all* persons, not just certain professionals, to report suspected child abuse. *Id.* at 3. Thus, many, if not all, covered professionals who learn of suspected child abuse on federal lands or in federal facilities would also be required to report under state laws. Covered professionals should therefore consult relevant state law to ensure that they are fully informed about the scope of their legal reporting requirements.

[5] As we have noted, section 13031(b) subjects a wide range of individuals to the reporting duty of subsection (a), including physicians, pharmacists, school officials, detention facility employees, and commercial film and photo processors. *See supra* note 1 (quoting 42 U.S.C. § 13031(b)). Those covered professionals thus may learn of possible child abuse from a variety of individuals besides those commonly referred to as "patients." For simplicity, however, we use the term "patient" as shorthand for any person from whom a covered professional may learn of potential child abuse.

[6] Similarly, the Department of Defense states that its relevant policy "does not contemplate that the statute applies in a situation where the patient merely blurts out that he has an addiction to child pornography." Instead, under its policy, reporting would be required in contexts where the patient "is drawn to a particular child," "knows the identity or whereabouts of a child depicted in the pornography," "help[s] to produce the pornography," or in other contexts where "there is an identifiable child or identifiable children that could be the subject of action by the child protective agency." E-mail for Jeannie S. Rhee, Deputy Assistant Attorney General, OLC, from John Casciotti, Office of General Coun-

The text of section 13031(a) imposes a reporting duty on a covered professional "who, while engaged in a professional capacity or activity described in subsection (b) . . . , learns of facts that give reason to suspect that a child has suffered an incident of child abuse." "[C]hild abuse," in turn, is defined as "the physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child." 42 U.S.C. § 13031(c)(1). The statute further provides that "the term 'sexual abuse' includes the employment [or] use . . . of a child to engage in . . . sexual exploitation of children," and that "the term 'exploitation' means child pornography or child prostitution." *Id.* § 13031(c)(4), (6). Under these definitions, covered professionals must report suspected abuse if they learn of facts giving reason to suspect that a child "has suffered an incident of [employment or use to engage in child pornography],"[7] or "has suffered an incident of [child pornography]."

Although section 13031 does not define the term "child pornography," it is defined elsewhere in the U.S. Code as

> any visual depiction, . . . whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—

---

sel, Department of Defense (Feb. 26, 2010, 5:02 PM). The Department of State "does not have a formal position or policy addressing whether the reporting requirement is triggered when a covered professional learns that someone has viewed child pornography, but the professional does not know the identity of the child or children depicted and has no reason to believe that the viewer knows their identities." E-mail for Jeannie S. Rhee, Deputy Assistant Attorney General, OLC, from Robert Choo, Office of the Legal Adviser, Department of State (July 21, 2010, 2:35 PM). It recognizes, however, that this situation "may trigger other actions including the enforcement of child pornography laws, if applicable, or internal discipline." *Id.*

[7] The substitution in the text is not completely straightforward, in that the statute defines "exploitation"—without any qualification—to include "child pornography or child prostitution," but defines "sexual abuse" to include "rape, molestation, prostitution, or other form[s] of sexual exploitation of children." *Compare* 42 U.S.C. § 13031(c)(6) (definition of "exploitation"), *with id.* § 13031(c)(4) (definition of "sexual abuse"). We do not think, however, that the statute intends to draw a strong distinction between "exploitation" and "sexual exploitation." The latter phrase is not a defined term. And the statute in other respects seems to treat the two terms as essentially interchangeable. In particular, the definition of "sexual abuse" expressly provides that "prostitution . . . of children" is a form of "sexual exploitation of children," and the definition of "exploitation" similarly provides that "child prostitution" is a form of "exploitation." *Id.* § 13031(c)(4), (6).

(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(B) such visual depiction is . . . of a minor engaging in sexually explicit conduct; or

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C. § 2256(8).[8] This definition is consistent with dictionary definitions of child pornography. *See, e.g.*, *Black's Law Dictionary* 1279 (9th ed. 2009) (defining "child pornography" as "[m]aterial depicting a person under the age of 18 engaged in sexual activity").

Under these definitions, child pornography is not a specific action or set of actions, but an end product, a particular kind of visual depiction that is "made or produced." 18 U.S.C. § 2256(8). It is thus not entirely clear what it means "to engage in child pornography," or for "a child" to have "suffered an incident of" child pornography. Notably, however, certain other forms of "child abuse" in section 13031 are also defined as end results rather than actions. "[P]hysical injury," for example, is defined to include, among other things, "lacerations, fractured bones, burns, [and] internal injuries." 42 U.S.C. § 13031(c)(2). And it is relatively straightforward to conclude that a child has "suffered an incident of" lacerations or fractured bones if the child has been subjected to physical abuse that results in those injuries. We think it is similarly clear that, whatever else the phrase may include, a person has "engage[d] in child pornography" if that person has produced or created pornographic images of children, and that "a child has suffered an incident of" child pornography if that child has been made the subject of pornographic images. The pornography is "a permanent record" of the abusive conduct of creating a pornographic image of a child. *New York v. Ferber*, 458 U.S. 747, 759 (1982).

Based on this analysis, we conclude that a covered professional who learns that a patient under his or her care has viewed child pornography may be aware of "facts that give reason to suspect that a child"—the

---

[8] Other definitions in section 13031, including the definition of "sexually explicit conduct"—a concept closely related to "child pornography," as the definition quoted above makes clear—track definitions in the same chapter (chapter 110) of the criminal code. *Compare* 42 U.S.C. § 13031(c)(5) (2006), *with* 18 U.S.C. § 2256(2) (2006).

subject of the specific pornographic images viewed by the patient—"has suffered an incident of child abuse." 42 U.S.C. § 13031(a).

We do not believe a covered professional in such a situation is relieved of an obligation to report such facts simply because he or she does not know or have reason to know, or have reason to believe a patient knows, the identity of the child depicted in the pornography. Subsections (a) and (d) of section 13031 do not require, either expressly or by implication, that a covered professional (or his or her patient) know the identity of the child or children abused in order to have a reporting obligation. We generally "'resist reading words or elements into a statute that do not appear on its face.'" *Dean v. United States*, 556 U.S. 568, 572 (2009) (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997)). Moreover, imposing a requirement that the victim's identity be known would be in tension with Congress's protective purpose. *See, e.g.*, 136 Cong. Rec. 36,312 (1990) (statement of Sen. Biden) (noting that the statute would "make [the] criminal justice system more effective in cracking down on child abusers").

Even assuming that the statute's references to "a child" in section 13031(a) and (d) limit the reporting requirement to situations involving "a" specific, potentially identifiable child, that limitation provides no basis for imposing the additional prerequisites to reporting that the covered professional know or have reason to believe his or her patient knows the identity of a child depicted in pornography the patient admits to viewing. Pornography may well involve "a" specific, potentially identifiable child even if neither covered professionals nor their patients know the child's identity. Even if covered professionals (or their patients) do not know the identity of any children depicted in pornography viewed by a patient, a report may lead authorities to specific, identifiable children. While some child pornography may be the work of professionals and therefore difficult to link to specific identifiable children, other such images are homemade recordings, taken in domestic contexts, of sexually abusive acts "committed against young neighbors or family members," and therefore traceable through law enforcement investigation to a particular child or children. Philip Jenkins, *Beyond Tolerance: Child Pornography on the Internet* 82 (2001); *see also* Richard Wortley & Stephen Smallbone, Community Oriented Policing Services, Dep't of Justice, Problem-Oriented Guides for Police, Problem-Specific Guides Series No. 41, *Child Pornography on the Internet* at 9 (2006), http://

www.cops.usdoj.gov/Publications/e04062000.pdf (last visited ca. 2012) ("[M]ore commonly, amateurs make records of their own sexual abuse exploits, particularly now that electronic recording devices such as digital cameras and web cams permit individuals to create high quality, homemade images.").

For the same reasons, section 13031(d)'s statement that, in certain circumstances, social services or health care agencies must refer reports of suspected child abuse "to a law enforcement agency with authority to take emergency action to protect *the child*" (emphasis added) should not be read to restrict the reporting obligation to situations in which covered professionals know the identity of the children who are the victims of suspected abuse. This law-enforcement referral requirement applies not to covered professionals, but to the "social services or health care agencies" that receive reports of suspected child abuse. 42 U.S.C. § 13031(d). The statute expressly contemplates that the agency receiving the report, not the covered professional, must ascertain which law enforcement agency is "authori[zed] to take emergency action to protect the child." *Id.* And although the referral requirement could be read to reflect an assumption that these agencies generally will know the identity of the child in need of protection, the requirement also could be satisfied by identifying a law enforcement agency with authority to initiate an investigation to ascertain the identity and location of the suspected victim.

We therefore conclude that the fact that a patient has viewed child pornography may constitute a "fact[] that give[s] reason to suspect that a child has suffered an incident of child abuse" under section 13031, and that a covered professional is not relieved of the obligation to report such a fact simply because the identity of the injured child is unknown.

## C.

As noted, the VCAA provides for criminal penalties. 18 U.S.C. § 2258. When interpreting a statute's civil provision, the violation of which is also subject to criminal sanction, the rule of lenity may be invoked to resolve ambiguity in the provision. *See Leocal v. Ashcroft*, 543 U.S. 1, 11–12 & n.8 (2004); *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517–18 & n.10 (1992) (plurality opinion). Here, however, we resolved both of the interpretive questions you presented without employing the rule of lenity, because we concluded

that the provisions at issue did not present any "grievous ambiguity or uncertainty" that could not be addressed by applying ordinary tools of statutory construction. *Muscarello v. United States*, 524 U.S. 125, 139 (1998) (internal quotation marks omitted).

We recognize, however, that the statutory trigger for the reporting requirement—the learning of "facts that give reason to suspect that a child has suffered an incident of child abuse"—is extremely broad. For example, the statute's text does not appear to require either that the suspected abuse have occurred recently or that there be a direct connection between the facts and a particular perpetrator of or witness to abuse. Thus, a doctor's duty to report conceivably could be triggered by a patient's revelation that his neighbor confided that he was abused as a child some decades ago, a patient's revelation that acquaintances long ago had viewed child pornography, or a patient's expression of amazement that he had learned from the Internet that child abuse or child pornography was far more prevalent than he had previously believed.[9] Because failures to report may be criminally prosecuted, courts may be concerned about the uncertain breadth of the suspected abuse that may be subject to section 13031's reporting requirement, particularly when combined with the ambiguities discussed in Parts II.A and II.B.

You have not asked us to define the boundaries of the phrase "facts that give reason" to suspect child abuse or to discuss the application of 18 U.S.C. § 2258, but we note that covered professionals who fail to make a report required by the statute may not always be criminally liable for their failure to do so. Significantly, although the VCAA's criminal penalty provision lacks an express *mens rea* requirement, courts generally "interpret[] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *X-Citement Video*, 513 U.S. at 70.[10] Courts deciding whether to impose

---

[9] We do not consider here whether other aspects of the language quoted in the text above, or of language elsewhere in the statute, might limit its application in some such situations. A court might also adopt a narrowing construction of the statutory trigger for the reporting requirement to avoid notice concerns. *See Skilling v. United States*, 130 S. Ct. 2896, 2931 (2010).

[10] As the Supreme Court has explained, the presumption that a statute contains a *mens rea* requirement even when that requirement is not explicit in the statutory text is consistent with the rule of lenity. *See Liparota v. United States*, 471 U.S. 419, 427–28 (1985).

criminal penalties on a covered professional for failing to file a report would have to decide (i) whether to construe 18 U.S.C. § 2258 to impose a *mens rea* requirement, and (ii) if they do so, what the required *mens rea* is. And while for some statutes, courts have required only that a defendant have knowledge of the "facts that make his conduct illegal," *Staples v. United States*, 511 U.S. 600, 605 (1994), for others, courts have required that a defendant know that his or her conduct was "unauthorized or illegal" before criminal liability could be imposed, particularly where failure to impose such a requirement would "criminalize a broad range of apparently innocent conduct," *Liparota v. United States*, 471 U.S. 419, 426, 434 (1985). Here, a court concerned about ordinary citizens' ability to decipher the contours of the abuse that must be reported, or about the statute's punishment of a failure to act rather than an affirmative act, might be inclined to adopt this kind of heightened *mens rea* requirement. *See Skilling v. United States*, 130 S. Ct. 2896, 2927–28 (2010) (noting that a "'criminal offense'" must be defined "'with sufficient definiteness that ordinary people can understand what conduct is prohibited'" (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983))); *id.* at 2933 (noting that a "*mens rea* requirement" can help "blunt[] . . . notice concern[s]"); *Lambert v. California*, 355 U.S. 225, 228 (1957) (holding that due process requires that a person who is "wholly passive and unaware of any wrongdoing" have notice of a registration requirement before she may be held criminally liable).

## III.

In sum, any person who, while engaged in a professional capacity or activity described in subsection (b) of section 13031 on any federal land or in any federally operated (or contracted) facility, learns of "facts that give reason to suspect that a child has suffered any incident of child abuse" must report the suspected abuse to a designated agency. The fact that a patient has viewed child pornography may "give reason to suspect that a child has suffered an incident of child abuse" under the statute, and

---

Inferring a *mens rea* requirement is, however, a distinct practice from applying the rule of lenity, and the Court has suggested that lenity principles may not apply in determining the degree of *mens rea* that is required. *See Staples v. United States*, 511 U.S. 600, 619 n.17 (1994).

a covered professional is not relieved of an obligation to report the possible abuse simply because neither the covered professional nor the patient knows the identity of the child depicted in the pornography. As described, however, a covered professional's failure to file a required report will not necessarily result in criminal liability.

VIRGINIA A. SEITZ
*Assistant Attorney General*
*Office of Legal Counsel*