# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1675
Filed May 13, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Martell Guider,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Washington County,
The Honorable Michael Carpenter, Judge.

———————————

**AFFIRMED**

———————————

Martha J. Lucey, State Appellate Defender, and Melinda J. Nye (argued),
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven (argued), Assistant
Attorney General, attorneys for appellee.

———————————

Heard at oral argument
by Schumacher, P.J., Chicchelly, J., and Bower, S.J.
Opinion by Schumacher, P.J.

**SCHUMACHER, Presiding Judge.**

Martell Guider appeals his conviction of sexual exploitation of a minor in violation of Iowa Code section 728.12(1) (2024), asserting there was insufficient evidence to support his conviction, knowledge of a victim's age is an element of the charge per United States Supreme Court precedent, and his sentence qualifies as cruel and unusual punishment. Upon our review, we affirm.

## I.      Background Facts & Proceedings

Guider was a thirty-six-year-old contracted nursing assistant working at an Iowa nursing home. J.W., a seventeen-year-old high school student, was a nursing aide working at the same nursing home. The two developed a friendship while working, and J.W. added Guider on Snapchat, where they would communicate. The relationship turned "flirtatious," with Guider telling J.W. he was twenty-eight-years old, and that he wanted to take J.W. on a date. Guider asked J.W. how old she was, and she informed him that she was seventeen. J.W.'s date of birth was also listed on her Snapchat profile.

After learning J.W.'s age, Guider continued to communicate with J.W. According to J.W.'s testimony, Guider would "go out of the way" to run into her while working and "brush up against" her. Guider told J.W. that he wanted to see her wearing tighter work clothes. At some point, Guider requested J.W. send him a nude photo "[b]ecause he wanted to pleasure himself with [it], and he wanted to look at [ J.W.] and get closer connected with [ J.W.]" J.W. complied and sent a photo on Snapchat of her nude buttocks with a text caption stating, "hard at work." Guider "screenshotted" the image, allowing him to save it to his phone. There were also other photos sent by J.W. where she was clothed.

Around a week after that message was sent and saved, another nursing home employee notified management "that things weren't going well with [Guider] with one of the other workers." Management contacted the account manager who handled Guider's employment contract, Bergmeier. After this notification, Bergmeier requested Guider to call her. Guider stated that he did converse with J.W., but as soon as he found out that she was underage, he cut off all conversation with her. Guider later texted Bergmeier stating "he didn't like to have his name tarnished and that he wanted to make a rebuttal that she had sent nude pictures of her" and sent the photo to Bergmeier.

Bergmeier testified that they had not discussed any photos during the phone call, and Guider sent the photos in a subsequent text, unprompted. Bergmeier then sent the nude photo to staff at the nursing home, where they confronted J.W. about it. After J.W. learned that other people had seen the photo, she felt "scared and exposed." Nursing home staff then reported the situation to law enforcement.

An investigator interviewed Guider, who asserted that J.W. had initiated communications on Snapchat and once he discovered her age, he "told her I couldn't talk to her any more, and that's when she started to send those pictures . . . [a]nd I blocked her on Snapchat." Guider stated that he never requested nude photos from J.W. and she sent them unprompted. The investigator asked Guider why he screenshotted the nude photo. Guider responded that he had saved the photo because at that point, he was not aware of J.W.'s age. Guider also stated that he sent the photos to Bergmeier to show he was not the aggressor in the situation.

The State charged Guider with three counts of sexual exploitation of a minor and one count of harassment in the third degree. Following a jury trial, Guider was convicted of one count of sexual exploitation of a minor. The

3

district court sentenced Guider to a term of incarceration not to exceed twenty-five years, suspended the sentence, and placed him on probation for five years. Guider was also ordered to register as a sex offender. Guider appeals the conviction and sentence.

## II.     Analysis

### (A)     Sufficiency of the Evidence

"We review sufficiency-of-evidence claims for correction of errors at law and will uphold the jury's verdict if it is supported by substantial evidence." *State v. Kieffer*, 17 N.W.3d 651, 655 (Iowa 2025). Substantial evidence is "evidence that is sufficient to 'convince a rational fact finder the defendant is guilty beyond a reasonable doubt.'" *Id.* (citation omitted). In determining whether evidence is substantial and thus sufficient, "we view the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *Id.* (citation omitted). Marshaling instructions, when not objected to, are the law for review of sufficiency of the evidence. *State v. Schwartz*, 7 N.W.3d 756, 764 (Iowa 2024). The relevant marshaling instruction regarding sexual exploitation of a minor is as follows:

> 1. On or between January 1, 2024, and January 24, 2024, the defendant solicited, knowingly permitted, or caused J.W., a person under the age of 18 years to engage in a prohibited sex act.

> 2. The defendant knew, had reason to know, or intended that the act would be photographed, filmed, or preserved in a visual medium.

Guider asserts there was insufficient evidence to prove that "he solicited [ J.W.] or caused [ J.W.] to engage in 'nudity or partial nudity'

4

knowing or intending that her nudity would be photographed."[1] He argues that J.W. may have previously created the nude image and so "a request for a preexisting nude image, or the receipt of a previously existing nude image, is insufficient to establish a violation of section 728.12(1)."

As for the "solicited" element, Guider contends that the evidence merely shows he requested the nude photo "but doesn't prove he asked J.W. to engage in a prohibited sex act, knowing that act would be photographed." For the "knowingly permitted or caused" element, Guider argues the evidence fails to show "that J.W. posed nude and created a new image at Guider's request" because there was no evidence showing when the photo was taken. The crux of Guider asserts that if J.W. sent Guider an already-existing photo not created at his request, then section 728.12(1) was not violated.

The State counters concerning the solicitation element that even if J.W. already possessed the photo sent to Guider, the very fact that he requested the photo satisfies the section 728.12(1). *See State v. Shearon*, 660 N.W.2d 52, 57 (Iowa 2003) ("[T]he crime of solicitation 'is in the asking.'" (citation omitted)). We agree. Our courts have determined that "solicit" means the "asking or urging" of conduct, *id.* at 56–57, which in this case was the request of J.W. to "engage in a prohibited sex act."

The evidence demonstrates that Guider requested nude photos from J.W. There is no evidence indicating he asked for an existing photo. The two were conversing on Snapchat, an application where the general purpose is to send photos and messages that delete themselves after a short time. Even if

---

[1] Iowa's statutory definition of a "sex act" includes "[n]udity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor." Iowa Code § 728.1(7)(g).

the evidence showed that the photo existed before Guider's request, his asking is enough for a reasonable jury to infer he solicited J.W. to provide a photo of her engaging in a sex act. *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) ("It is not our place 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.'" (citation omitted)). Further, "the ultimate success or failure of the solicitation is irrelevant to the validity of the conviction. The solicitation is committed when the inducement is attempted." *State v. Propp*, 532 N.W.2d 784, 786 (Iowa 1995) (cleaned up). While there is no direct evidence that J.W. created the nude photo at Guider's request, "lack of such proof does not compel acquittal as a matter of law." *Id.*

Viewing the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence, we find there was substantial evidence to convince the jury that Guider solicited J.W. "to engage in a prohibited sex act." Accordingly, we find there was no error at law in the jury's conclusion regarding the solicitation element.

Guider next contends, in the alternative, that there was insufficient evidence for the "knowingly committed, or caused" element of the offense, again asserting that if the photo already existed then J.W. did not commit a sex act on his request. We disagree with this contention based on the evidence.

The evidence demonstrates that after receiving the nude photo, Guider screenshot the photo, effectively saving the photo to his own phone for later viewing. The photo was sent by J.W. after Guider requested it. Again, "it is not our place 'to resolve conflicts in the evidence,'" especially when there is no material evidentiary conflict as there is nothing in the record that

6

J.W. took a previous photo, saved it, and then sent it to Guider after his request. *See Brimmer*, 983 N.W.2d at 256 (citation omitted). A reasonable jury could infer that Guider "knowingly permitted or caused" J.W. to send that photo after he asked for it, saved it, and failed to report it until an investigation into their relationship began. The evidence supports that Guider either—or both—caused J.W. to engage in a sex act by his asking or knowingly permitted the same by his actions after receiving the photo. We conclude there is sufficient evidence in the appellate record to support this determination by the factfinder.

### (B) Denial of Guider's Request for a Jury Instruction Requiring Knowledge of Minor's Age

Guider next argues that the district court erred in denying his request for a jury instruction which required knowledge of J.W.'s age as an element of sexual exploitation of a minor. He urges us to overrule *State v. Gilmour*, which determined section 728.12(1) does not require knowledge of a victim's age as an element. 522 N.W.2d 595, 597 (Iowa 1994).

We "review refusals to give a requested jury instruction for correction of errors at law." *State v. Benson*, 919 N.W.2d 237, 242 (Iowa 2018) (citation omitted).

Guider contends that the United States Supreme Court case *United States v. X-Citement Video, Inc.*, which was decided around a month after *Gilmour*, is supervening authority that effectively overrules *Gilmour*. *See* 513 U.S. 64, 69 (1994). In *X-Citement Video*, the Court interpreted The Protection of Children Against Sexual Exploitation Act's "knowingly receives, or distributes, any visual depiction . . . [of] the use of a minor engaging in sexually explicit conduct" language. *Id*. at 67–78 (analyzing

18 U.S.C. § 2252). The Court determined that, although the plain language of the statute indicates the term "'knowingly' modifies only the surrounding verbs," the statute must be read to include a knowledge requirement of "the age of the performers" shown in the videos. *Id.* at 68, 76 n.5. The Court reasoned that absurd results would occur if there were no scienter requirement in § 2252, as "we would sweep within the ambit of the statute actors who had no idea that they were even dealing with sexually explicit material," which the Court determined was not the intent of Congress. *Id.* at 69.

While § 2252 employs similar—but not the same—language as section 728.12(1), the United States Supreme Court neither held nor asserted its interpretation of the federal statute was binding upon comparable state statutes. *See generally id.* at 77; *State v. Houston*, 708 S.W.3d 492, 496 (Mo. Ct. App. 2024) (declining to follow *X-Citement Video*'s holding based on state law grounds). As with other states, "[t]he highest court of [Iowa] . . . remains 'the final arbiter of what is state law.'" *Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940)). "We look to the federal courts' interpretations of similar . . . statutory language as persuasive authority, but we aren't bound by them. Iowa's courts have interpretive authority over Iowa's statutes." *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 702 (Iowa 2022).

The Iowa Supreme Court made clear in *Gilmour* that section 728.12(1) does not require knowledge of age to satisfy the statute. 522 N.W.2d at 597 ("There is no indication in the statutory language that knowledge of age is an element of the offense."). This interpretation of section 728.12(1) has remained in effect for over thirty years, and we are in no position to overturn precedent. *See Figley v. W.S. Indus.*, 801 N.W.2d 602, 608 (Iowa Ct. App.

2011). The legislature has declined to amend the statute since *Gilmour* to require a knowledge-of-age element, further cementing stare decisis.[2] *See State v. Iowa Dist. Ct.*, 902 N.W.2d 811, 818 (Iowa 2017) ("The rule of stare decisis 'is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use . . . .'" (citation omitted))).

We find no error in the district court's denial of Guider's proposed jury instruction requiring knowledge of J.W.'s age.

### (C) Sentencing as Cruel and Unusual Punishment

Lastly, Guider asserts his suspended twenty-five-year sentence and the special sentence in which he will be supervised by the Iowa Department of Corrections for the remainder of his life constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution. *See* Iowa Code §§ 728.12(1), 902.9(1)(b), 903B.1. Guider argues that the facts of the case show his sentence was grossly disproportionate to the crime committed.

We review "constitutional questions de novo." *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009). "A defendant may challenge an illegal sentence at any time." *Id.*

When a defendant challenges their sentence, "claiming it is grossly disproportionate to [their] crime," we engage in a "three-step analysis." *State*

---

[2] Section 728.12(1) has been amended twice since *Gilmour*, but the substance of the statute remains the same as when *Gilmour* was decided. Neither amendment added a knowledge-of-age element. *See* 2003 Iowa Acts ch. 65; 2012 Iowa Acts ch. 1057.

*v. Oliver*, 812 N.W.2d 636, 647 (Iowa 2012) (citing *Solem v. Helm*, 463 U.S. 277 (1983)).

> The first step in this analysis, sometimes referred to as the threshold test, requires a reviewing court to determine whether a defendant's sentence leads to an inference of gross disproportionality. This preliminary test involves a balancing of the gravity of the crime against the severity of the sentence. If, and only if, the threshold test is satisfied, a court then proceeds to steps two and three of the analysis. These steps require the court to engage in an intrajurisdictional analysis comparing the challenged sentence to sentences for other crimes within the jurisdiction. Next, the court engages in an interjurisdictional analysis, comparing sentences in other jurisdictions for the same or similar crimes.

*Id.* (cleaned up). "If the sentence does not create an inference of gross disproportionality, then 'no further analysis is necessary.'" *Id.* at 650 (citation omitted).

Beginning our analysis of whether the sentence was grossly disproportionate to the crime committed, we must consider additional principles. *Id.* First, "we owe substantial deference to the penalties the legislature has established for various crimes." *Id.* This legislative deference is afforded "because '[l]egislative judgments are generally regarded as the most reliable objective indicators of community standards for purposes of determining whether a punishment is cruel and unusual.'" *Id.* (alteration in original) (citation omitted).

Second, although "our review is more stringent than is required under the Federal Constitution," it is uncommon "that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant further review." *Id.*

Third, we may "consider the offender's criminal history" when determining gross disproportionality, as "a recidivist offender is more

culpable and thus more deserving of a longer sentence than a first-time offender." *Id.* Longer sentences are likely to be deemed "constitutional when imposed on offenders with lengthy criminal histories." *Id.* at 650–51.

Lastly, we may consider "the unique features of a case," noting they can converge to show "a high risk of potential gross disproportionality." *Id.* at 651 (citation omitted).

Here, Guider contends that he attempted to end his flirtatious relationship with J.W. after discovering her age. He also points to the relationship only lasting a month, that J.W. was old enough to legally consent to a sexual relationship, and highlights that a single nude picture was sent. *See* Iowa Code § 709.4. Guider asserts that "even taking [J.W.'s] testimony as true, it is unclear when he learned her age and whether he knew she was seventeen when he asked for the nudes."

But it was the province of the jury to weigh the credibility of J.W.'s testimony against Guider's version of events. The jury, based on the marshaling instructions, found that Guider solicited or permitted J.W. to send the photo to and for him. The jury chose to believe J.W.'s testimony that Guider was aware of her age before request.

As for J.W. being of legal age to consent to a sexual relationship, such argument has no bearing to the conviction on appeal. And "[a] criminal defendant is not entitled to acquittal merely because he wishes the jury had believed him instead of the victim." *State v. Hernandez*, 20 N.W.3d 502, 507–08 (Iowa Ct. App. 2025). The jury determined that Guider, a man in his thirties, began a flirtatious relationship with a minor, became aware she was a minor, then asked for her to send him a nude photograph.

As to the severity of the punishment for the offense, we give substantial deference to the legislature's determination of penalties for violating the statute. *Oliver*, 812 N.W.2d at 650. The district court was required to impose a twenty-five-year sentence with a fifty-percent minimum served prior to parole eligibility. But the district court had the discretion to suspend the sentence and place Guider on probation, which is what happened. And his lifetime registration as a sex offender is not relevant to our analysis, as our courts have determined "sex offender registration remains nonpunitive." *State v. Hess*, 983 N.W.2d 279, 285 (Iowa 2022).

Guider's remaining challenge to his sentence concerns the lifetime special sentence, "as if on parole," to begin after the end of his underlying sentence. Iowa Code § 903B.1. This challenge is not ripe for our review. *See State v. Tripp*, 776 N.W.2d 855, 858 (Iowa 2010) (finding a challenge to a lifetime parole sentence was not ripe because: (1) the defendant had served no time in prison; (2) the sentence was suspended, and defendant was on probation; (3) parole supervision and terms can be modified or deleted, and; (4) additional punishment on parole "is speculative and will only be realized if [the defendant] violates the terms of his parole").

Accordingly, we find that the severity of the punishment for violating section 728.12(1) was not grossly disproportionate to the crime committed and we need not proceed to the final two steps of the analysis. *See Oliver*, 812 N.W.2d at 653. We affirm the sentence of the district court.

## III.   Conclusion.

For the above reasons, we affirm the district court.

**AFFIRMED.**